## Seyfert *versus* Bean.

1. Where an agent, without disclosing his principal, executes a lease of a house in his own name, the tenant holds under the agent; and it makes no difference that the agent in signing the lease wrote the word "agent" after his signature.

2. In an action to recover damages for a wrongful eviction from real estate occupied by the tenant as a school, and for a wrongful distress and sale of goods found on the premises, in order to prove the amount of the damages, evidence was admitted of the number of teachers and pupils in the school, and of its condition, and of the sums paid by the plaintiff in advertising the school, and the bills for the goods wrongfully distrained and sold were admitted in evidence: *Held*, that all of this evidence was admissible.

3. In an action by B. against S. for wrongful eviction from real estate, it appeared that S., two months after he had gone into possession, began proceedings before an alderman under the landlord and tenant Act of 7th April 1825 to recover possession, and the transcript of these proceedings was put in evidence; the transcript showed that no judgment had been entered, but that counsel had appeared for B. and relinquished possession of the property: *Held*, that evidence was admissible to show what really occurred before the alderman and that such evidence did not contradict any finding of the alderman: *Held*, that evidence was admissible to show that B.'s counsel had no authority from her to relinquish her possession of the property.

February 7th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of July Term 1876, No. 106.

This was an action of trespass on the case by Fannie Bean against William M. Seyfert. The *narr.* contained counts for an eviction and for trespass *de bonis asportatis.* Pleas, not guilty. The facts were these:—

Boileau & Sankey leased a dwelling-house in Philadelphia to the plaintiff for a boarding school, for one year from September 1st 1870, at a rental of $3000, payable quarterly in advance. The lease was in their name throughout, except that the word "agents" was added to their signature to the lease. On December 1st 1870, two quarters' rent was due, and on December 31st, Seyfert, who owned the property and who had employed Boileau & Sankey as his agents, gave to a constable a warrant of distress for arrears of rent. A distress was made on the same day under this warrant in Seyfert's name, and a watchman left in charge. When the distress was made the house was temporarily vacant, the plaintiff having moved away while some repairs, made necessary by a slight fire, were being made. There was evidence tending to prove that plaintiff's sister went to the house after the levy, and obtained an entrance with great difficulty; that afterwards the plaintiff was not allowed the use of a room in the house in which to receive her pupils, but had been obliged to receive them on the sidewalk before the house; that Seyfert had told her she should not go back to the house, because the carpenters were making repairs, and he wished to occupy it himself; that Sankey told the plaintiff that Seyfert wanted the house for his own use; that he

[Seyfert *v.* Bean.]

could collect the rent up to March 1st, and keep her out of the house too; that he would release the goods if she would pay the rent up to March 1st, but that she must move away from the house at once; that Sankey had the gas turned off and the house locked, and refused to give the plaintiff the key. There was, however, evidence on the part of the defence which conflicted with this. The goods were removed to an auction store by the constable, at the plaintiff's request, and there sold at auction, and the net proceeds of the sale, amounting to $1253.26, were retained by Seyfert.

On February 23d 1871, proceedings under the Landlord and Tenant Act of 1825 were begun by Seyfert against the plaintiff.

A transcript of these proceedings was put in evidence at the trial; it showed that no judgment had been entered, but that David Paul Brown had appeared at the hearing on March 1st 1871, as attorney for Miss Bean, and desired to place upon the alderman's record the full relinquishment of the premises.

On the question of damages, the plaintiff testified as to the number of pupils in the school and the number of teachers employed by her, also as to the amount expended by her in advertising her school, and put in evidence the bills for the purchase of the property distrained by the defendant. This evidence was objected to on behalf of the defendant, and its admission constituted the first three assignments of error.

As to the transcript of the proceedings under the Act of 1825, which was placed in evidence by the defendant, one DeHaven testified, on behalf of the plaintiff, in rebuttal, as follows: "At 8 A. M. I went with Mr. Brown to the alderman's office. Mr. Brown asked Mr. Sankey if he had not the key, and whether he was not in possession. He admitted he was. Mr. Plankinton said there was no case, and we left. Mr. Brown had no key, and made no delivery. I heard nothing of the sort as is placed on the record."

The plaintiff further testified that she had never authorized Mr. Brown to relinquish possession of the property for her before the alderman, and that she had never known of his having done so till a year after.

The admission of all this evidence was objected to by the defendant, and formed the subject of the remaining assignments of error.

The jury found a verdict for the plaintiff in $9422, on which all over $5128 was afterwards remitted by the plaintiff. After judgment for this latter amount, the defendant took this writ of error. The assignments of error were all to the admission of evidence as shown above.

*T. F. Jenkins* and *Benjamin H. Brewster*, for the plaintiff in error.

*R. P. White,* for the defendant in error.

[Seyfert *v.* Bean.]

Mr. Justice MERCUR delivered the opinion of the court, May 7th 1877.

This was an action of trespass. The defendant in error leased a house from Boileau & Sankey. By the terms of the lease it was to be occupied as a young ladies' private school only. She so occupied it. In this suit she claims to recover damages for an eviction from the house, and for the removal and conversion of her goods by the plaintiff in error.

All the assignments of error are to the admission of evidence. No objection is made to the charge of the court, nor to the sufficiency of the evidence to justify the verdict.

The first three assignments relate to the pertinency of the evidence to show damage.

The defendant in error had expended large sums of money in the purchase of furniture, books, charts, school apparatus and scientific instruments, and in advertising her business. Her school was prosperous, and constantly increasing. The bills, showing the cost of the goods she purchased, were some evidence of their value; but there was other evidence given of their aggregate value. The number of teachers employed, and the number of pupils in attendance, were important facts in showing the facilities afforded for instruction and the extent of its patronage. We cannot say that any of these expenditures were unnecessary in establishing and maintaining a first-class school.

Many of the articles had a value, when used in connection with her school, much greater than after they were removed therefrom. The deprivation of the possession of the house and of the goods broke up her school and destroyed her business. She was thereby not only deprived of all profit on the investment she had made, and the good-will she had acquired, but also of the entire capital itself.

The remaining assignments may be considered together. The evidence did not contradict any finding of the alderman. The transcript of his docket, given in evidence, does not show that he made any decision. He found no facts. He entered no judgment. The transcript merely shows that the counsel for the defendant desired to have placed on the record a relinquishment of the premises to the plaintiff. This being done, it shows no further proceedings by the alderman. The case was then suspended. No further action was taken. The time, however, when these proceedings were had before the alderman makes them of no importance. It was on the first day of March. She had been out of possession more than two months. He, as owner of the premises, and in denial of her right of possession, had withheld it from her during all that time. Her relinquishment of the premises or of her right thereto, after she had been excluded from the enjoyment thereof for so long a time, was no bar to a recovery of the damages she had previously sustained.

[Seyfert v. Bean.]

The right of a landlord to distrain for rent, which, by the agreement of the parties, is payable in advance, must be conceded, and also the right to impound the goods on the premises for a reasonable time. But neither of those rights rules this case. The defendant made no contract with the plaintiff. She leased the house of Boileau & Sankey. They let the premises to her. By the terms of the lease the relation of landlord and tenant was exclusively between them. In the body of the lease Boileau & Sankey are described as the sole lessors. It is true, at the foot they sign it as "agents."

Agents for whom? The lease is silent. As is clearly shown in Holt v. Martin, 1 P. F. Smith 499, in regard to a lease executed in a similar manner, the defendant did not thereby become the tenant of an unknown landlord.

The declaration of Brown having been given in evidence to show that he relinquished her possession of the premises at the time and in the manner stated, we see no error in permitting her to show that he had no such authority. It was clearly admissible for her to show that she had no knowledge of what he had professed to do until a year thereafter.                    Judgment affirmed.