## Commonwealth Bank and Trust Company v. Keech et ux., Appellants.

Argued April 16, 1963. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*F. Cortez Bell,* with him *John H. Cartwright,* and *Bell, Silberblatt & Swoope,* for appellants.

*Norbert J. Pontzer,* with him *George F. Taylor,* and *Pontzer & Pontzer,* and *Taylor, McNaugher & Duerring,* for appellee.

OPINION BY FLOOD, J., June 13, 1963:

The defendants have appealed from the action of the court below in refusing to open a judgment entered against them by confession on a motor vehicle installment sales contract. The court considered the matter on petition, answer, stipulation and depositions.

The defendants on March 29, 1961, purchased a 1961 Ford from Merle C. Freeborn, giving a 1957 Ford in trade and executing an installment sales contract for the balance of the purchase price. Freeborn assigned the contract to Industrial Discount Company which financed the sale. That company later reassigned the contract to the plaintiff bank, which entered judgment on it against the defendants on January 22, 1962.

Freeborn had obtained the 1961 Ford which he sold to the defendants from Ferris and Forbes, Inc., a Ford dealer in Bolivar, New York. Freeborn was not ac-

ceptable to Ford Motor Company as a sub-dealer for Ferris and Forbes, but he had agreed to purchase and pay for the automobiles which Ferris and Forbes furnished him to sell, payment to be made by him after he had sold them to customers. He had sold six such cars, including that sold to the defendants, for which he had not paid Ferris and Forbes at the time of his death on April 14, 1961. Ferris and Forbes have taken no legal action to recover any of these cars. Six other cars remained on the Freeborn floor unsold and were voluntarily returned to Ferris and Forbes by the Freeborn estate.

The husband-defendant drove the car for some days following his purchase from Freeborn using temporary plates and then drove to Freeborn's place of business for the 1,000 mile check-up. Finding it closed because of Freeborn's death, he drove on to the place of business of Ferris and Forbes, Inc., in Bolivar, New York, and had the car checked. Ferris and Forbes did not at that time ask him to return the car to them. They claim that they did not then know it was one of the cars which they had delivered to Freeborn, but on the same day they learned that Freeborn had committed suicide and that Keech had obtained one of their cars from him.

Ferris and Forbes, who held a New York certificate of title for the car, refused to give a bill of sale or a certificate of title to the defendants because of Freeborn's failure to pay for the car. On October 2, 1961, the defendants consulted counsel who made various unsuccessful efforts to obtain a certificate of title from Ferris and Forbes.

The plaintiff bank, after telling the defendants that it would replevy the car and get him a title if he would turn over the car to it, brought suit to replevy it on January 19, 1962, and informed the defendants, about two days later, that suit had been filed.

Meantime, Ferris and Forbes had been making efforts to induce the defendants to return the car. They at first refused to do so, but on January 15, 1962, they delivered the car to Ferris and Forbes upon that company's promise to sell them a new car at cost, by which they would benefit to the extent of $400 or $500. The defendants, although they had counsel at the time, did not consult him as to whether they should return the car to Ferris and Forbes. Industrial Discount Company had previously advised them not to return it.

Ferris and Forbes, Inc. extended Freeborn an average credit of $10,000 to $15,000, but at the time of his death his credit balance with it amounted to $28,000.

The court below held that there had been an outright sale of the car by Ferris and Forbes to Freeborn and by Freeborn to the defendants; that the defendants failed to rescind promptly upon learning that they were not going to get a certificate of title; that they were the owners of the car and turned it back to Ferris and Forbes of their own volition to benefit themselves at the expense of their creditors; that they knew that the contract had been assigned but did not deliver the car to either Freeborn Motors or its assignee but to a stranger to the transaction; that they did not come into equity with clean hands and that any loss they sustained was due to their own negligence, their failure to act promptly to protect their rights and their voluntarily giving the car to Ferris and Forbes, Inc., which had no right or claim to it.

The difficulty with this disposition is that it does not clearly appear from the pleadings, the stipulation and the depositions whether Ferris and Forbes, Inc. was a stranger to the transaction. That company may well have been the undisclosed principal of Freeborn. No bill of sale or certificate of title was delivered to Freeborn by Ferris and Forbes, Inc. There is undisputed testimony by Mr. Ferris, who is treasurer and a

director and stockholder of Ferris and Forbes, Inc., in his depositions, that when their cars were on Freeborn's floor, there was a sticker on the window containing the name "Ferris and Forbes, Inc.", together with the list price and the equipment. Ferris and Forbes, by their efforts to get the car back from the defendants, impliedly, at least, asserted ownership of it. Freeborn brought prospective customers to the Ferris and Forbes showroom in Bolivar, New York, to show them the models. Clyde Keech testified that Freeborn took him to Ferris and Forbes' showroom in Bolivar, New York, to show him the car, that he then went back to Shinglehouse, Pennsylvania, to sign the contract and the car was later delivered to him where he was working in Allegany, New York, by Freeborn's son-in-law and salesman.

The question as to whether Ferris and Forbes, Inc. was the undisclosed principal of Freeborn in this transaction is a jury question.

Section 15F of the Motor Vehicle Sales Financing Act of June 28, 1947, P. L. 1110, as amended, 69 PS §615F provides that no installment sales contract covering motor vehicles "shall contain any provision relieving the holder, or other assignee, from liability for any legal remedies which the buyer may have had against the seller under the contract". Consequently any defence good against the seller of the car at the time of the assignment of the contract is good against the assignee bank. *First National Bank of Millville v. Horwatt,* 192 Pa. Superior Ct. 581, 162 A. 2d 60 (1960).

Therefore, if it is determined that Ferris and Forbes, Inc. is Freeborn's undisclosed principal, it is the seller and a defence good against it would be good against the plaintiff under the Motor Vehicle Sales Financing Act.

The common law rule is that an undisclosed principal is not a party to a contract executed by his agent

under seal. *Seyfert v. Bean,* 83 Pa. 450 (1877), Restatement (2d), Agency §158. But this rule has been abrogated in Pennsylvania as to contracts for the sale of goods by §2-203 of the Uniform Commercial Code, 12A PS §2-203: "The affixing of a seal to a writing evidencing a contract for sale or an offer to buy or sell goods does not constitute the writing a sealed instrument and the law with respect to sealed instruments does not apply to such a contract or offer." Therefore, if Ferris and Forbes, Inc. is Freeborn's principal, it is liable to the plaintiff as assignor and guarantor of the contract of sale. It is also the seller against whom the buyers have a defence which is good against the plaintiff also under the Motor Vehicle Sales Financing Act.

The plaintiff bank argues that there was no failure of consideration as to the defendants' claim, but only a breach of implied warranty of title which entitled the defendants to rescind, but only by rejecting the goods within a reasonable time after delivery as required by the Uniform Commercial Code, §2-602, 12A PS §2-602. It contends that since the defendants did not surrender the car to the seller within a reasonable time, they cannot avail themselves of this defence, citing the following provision of §2-602(1) of the Uniform Commercial Code, 12A PS §2-602(1): "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."

However, the buyers here notified Ferris and Forbes, Inc. of their difficulty and tried unsuccessfully for a period of many months to get a title certificate from it. When they become convinced that Ferris and Forbes would not deliver the certificate they returned the car and it was accepted without complaint. Ferris and Forbes, who wanted the car back and accepted it, cannot complain that it was not returned within a

reasonable time. Therefore, if it is determined that Ferris and Forbes, Inc. is Freeborn's principal, in the sale, the defendants have a defence to any obligation to make payments on the contract of purchase.

The question remains as to whether the defendants are estopped from raising this defence against the plaintiff because of the return of the car to Ferris and Forbes, Inc. against the plaintiff's wishes. If Ferris and Forbes, Inc. is Freeborn's principal, it is liable to the plaintiff under the guaranty contained in the assignment of the contract executed by Freeborn to Industrial Discount Company and the plaintiff would then have the right to replevy the car from Ferris and Forbes. While the defendants by transferring title to Ferris and Forbes have made a second replevin action necessary, this is a risk the plaintiff took on this assignment under the Motor Vehicle Sales Financing Act, since under the act and the Uniform Commercial Code the plaintiff had the right to rescind the contract and return the car. It would be destructive of the policy of the Motor Vehicle Sales Financing Act to hold that the defendants' efforts to have the contract completed by the seller, and their return of the car, without objection from the seller, only after those efforts had failed, thus making the remedy of rescission available to them, would estop them from raising the defence. The question whether Ferris and Forbes, Inc. was the undisclosed principal in this transaction should be determined by a jury and consequently the judgment should be opened.

The order is reversed and the case is remanded for further proceedings consistent with this opinion.