ASSOCIATES DISCOUNT CORPORATION, A CORPORATION, PLAINTIFF-RESPONDENT, v. CLARENCE PALMER, DEFENDANT-APPELLANT.

Argued March 23, 1966—Decided May 23, 1966.

*Mr. John Abbotts* argued the cause for appellant (*Messrs. Abbotts & Abbotts,* attorneys).

*Mr. John Montis* argued the cause for respondent (*Messrs. Montis & Litowitz,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. The sole question on this appeal is whether plaintiff's suit is barred by the statute of limitations. Defendant appealed from an adverse judgment in the Mercer County District Court, and we certified the cause on our own motion prior to argument in the Appellate Division.

On April 18, 1957, defendant purchased an automobile from Reedman Motors Corporation in Langhorne, Pennsylvania. The sale was financed by a "Bailment Lease Security Agreement" which recited that defendant was a resident of Trenton, New Jersey. The instrument also stated: "This agreement is subject to the provisions of the Pennsylvania Motor Sales Finance Act and the Uniform Commercial Code." Next to defendant's signature appears the printed term "(Seal)." On the day after the sale Reedman Motors assigned the agreement to the plaintiff corporation.

On July 10, 1957, defendant made his first and only installment payment, and in August 1957 he voluntarily permitted plaintiff to repossess the automobile. It was sold at auction on August 16, 1957, for $393.70 less than defendant's outstanding debt to plaintiff.

No further steps were taken by plaintiff to enforce its claim until July 20, 1964, almost seven years after the auction sale, when it brought this action to recover the $393.70 deficiency, accrued interest and attorney's fees, a total of $642.91. The trial court, sitting without a jury, found that the agreement "was a legal contract under seal properly executed by the defendant" and held for the plaintiff. However, there is nothing in the trial court's written opinion dealing with the statute of limitations defense which had been raised by the defendant.

We think the trial court erred and that plaintiff's action is barred by the statute of limitations. Plaintiff's assignor and defendant specifically agreed that the sale of the automobile would be governed by the provisions of the Uniform Commercial Code which had become effective in Penn-

sylvania in 1954. *Pa. Stat. Ann. tit.* 12A, § 1–101 *et seq.*[1] The Sales Article of the Code provides at *Pa. Stat. Ann. tit.* 12A, § 2–725(1):

"An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it."

Admittedly, plaintiff here did not commence its action until long after the four year period had elapsed. There is no suggestion that defendant at any time attempted to evade service of process. Plaintiff's assignor knew from the inception of the transaction that defendant was a New Jersey resident and that any legal action against him would probably have to be taken in the courts of this State.

Plaintiff contends that the Uniform Commercial Code cannot apply to any transaction to which the Pennsylvania Motor Vehicle Sales Financing Act, *Pa. Stat. Ann. tit.* 69, § 601–637, is applicable. We disagree. The Pennsylvania courts have applied the provisions of both laws together when deciding cases involving motor vehicle sales, *Commonwealth Bank and Trust Co. v. Keech,* 201 *Pa. Super.* 285, 192 *A. 2d* 133 (*Super. Ct.* 1963); *Frank v. McCafferty Ford Co.,* 192 *Pa. Super.* 435, 161 *A. 2d* 896 (*Super. Ct.* 1960); *Commonwealth v. Two Ford Trucks,* 185 *Pa. Super.* 292, 137 *A. 2d* 847 (*Super. Ct.* 1958); and the Pennsylvania Motor Vehicle Sales Financing Act contains no statute of limitations which might conflict with the four year limitation in *Pa. Stat. Ann. tit.* 12A, § 2–725. See also *Pa. Stat. Ann. tit.* 12A, § 9–203 (2).

Plaintiff argues that a longer statute of limitations should apply because the agreement is a sealed instrument. We find no merit in this contention. *Pa. Stat. Ann. tit.* 12A § 2–725 makes no distinction between sealed and unsealed

[1] The Uniform Commercial Code in substantially identical form became effective in New Jersey on January 1, 1963. *N. J. S.* 12A:1–101 *et seq.*

instruments and provides a four-year statute of limitations for "any contract for sale." Moreover, the Code specifically states at *Pa. Stat. Ann. tit.* 12A, §2–203 :

"The affixing of a seal to a writing evidencing a contract for sale or an offer to buy or sell goods does not constitute the writing a sealed instrument and the law with respect to sealed instruments does not apply to such a contract or offer."

See *Commonwealth Bank and Trust Co. v. Keech, supra,* at 201 *Pa. Super.* 290, 192 *A. 2d* 135.

██ The "bailment lease" signed by the defendant is a combination, all inclusive instrument, constituting both a contract for sale and a security transaction. It has been suggested by the concurring opinion that an action for a deficiency is not governed by *Pa. Stat. Ann. tit.* 12A, § 2–725 on the theory that such action is part of the security arrangement between the parties rather than an incident of the sales aspect of their agreement. However, we think this view mistakes the true character of a deficiency suit. Such a suit is nothing but a simple *in personam* action for that part of the sales price which remains unpaid after the seller has exhausted his rights under Article 9 by selling the collateral; it is an action to enforce the obligation of the buyer to pay the full sale price to the seller, an obligation which is an essential element of all sales and which exists whether or not the sale is accompanied by a security arrangement.[2] See *Pa. Stat. Ann. tit.* 12A, § 2–709. Thus, because of the absence of a contrary indication anywhere in the Code, a deficiency action must be considered more closely related to the sales aspect of a combination sales-security agreement rather than to its security aspect and be controlled by the four year limitation

---

2 In fact, a seller may get his "deficiency judgment" *before* foreclosing his security interest or *before* deciding whether or not such a foreclosure would even be necessary or desirable. By reducing his total claim on the sales contract to judgment prior to foreclosure, a subsequent deficiency action becomes unnecessary should the collateral be insufficient to satisfy the buyer's debt. *Cf. Pa. Stat. Ann. tit.* 12A, § 9–501(1) and (5) ; *Pa. Stat. Ann. tit.* 12A, § 9–504(2).

in *Pa. Stat. Ann. tit.* 12A, § 2–725. Nothing in *Pa. Stat. Ann. tit.* 12A, § 2–102 changes this result.[3] This section excludes from Article 2 those dealings designed to operate *only* as security transactions,[4] a point which was emphasized by the official comments of the Pennsylvania Bar Association to *Pa. Stat. Ann. tit.* 12A, § 2–102:

> "Since transactions intended to operate 'only' as security transactions are excluded, actual sales are subject to this Article of the Code [Article 2—Sales], although a security interest is retained by the seller."

As we noted above, the instrument sued upon in the present case is not *only* a security agreement but is a sales contract as well.

The judgment of the trial court is reversed and the cause is remanded with a direction to enter judgment for the defendant.

HALL, J. (concurring). The majority opinion concludes that section 2–725(1) (*Pa. Stat. Ann.* title 12A, §725(1)) of the Uniform Commercial Code (UCC) prescribing a four-year statute of limitations in actions "for breach of any contract for sale" applies to a suit for a deficiency arising out of a secured transaction of sale. In reaching this conclusion, the court is in effect saying that Pennsylvania would so decide and that it is to be the rule in New Jersey, which has since enacted the Code effective January 1, 1963, as well as laying down an interpretation which may have an effect in all Code jurisdictions in view of the purpose of over-all uni-

---

[3] *Pa. Stat. Ann. tit.* 12A, § 2–102 provides:

"Unless the context otherwise requires, this Article applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this Article impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers."

[4] This section is frequently applied to transactions where a lender seeking a security interest will "buy" a chattel from the borrower in an effort to avoid the obligations of Article 9.

formity. To my mind, the question is not at all free from doubts, and since it apparently has never been passed on by any court, some considerations looking the other way should be discussed.

The matter of choice of law here is itself an interesting question, but I do not think it is of controlling importance. The majority opinion resolves the matter on the basis of the specific agreement of the parties. The "Bailment Lease Security Agreement," which is on a printed form obviously prepared by the plaintiff finance company and by its language intended only for use in Pennsylvania, does say that it "is subject to the provisions of the Pennsylvania Motor Vehicle Sales Finance Act and the Uniform Commercial Code." It seems to me that this would be so as a matter of Pennsylvania law, whether or not the form so stated, since the transaction was entered into and the agreement executed at the automobile dealer's place of business in that state. Although the transaction has New Jersey connections on its face,[1] I do not believe it can realistically be said simply by reason of the inclusion of the quoted printed language that the parties expressed a specific intention that Pennsylvania law should apply as to the statute of limitations should a deficiency suit be brought in any other state. The form would contain this same language whether that possibility existed or not. Nonetheless I think a state which has not enacted the Code (the position of New Jersey at the time this cause of action arose) can and should, in the interests of uniformity of result in Code transactions, adopt a choice-of-law rule which will result in the application of pertinent code provisions to a suit

---

[1] As a result of the filling of blanks in the agreement form, it was understood that the vehicle was to be kept at the defendant-purchaser's residence in this State and agreed that the monthly time payments were to be made at the plaintiff's office in Trenton, New Jersey. It would seem that the obligation to pass formal title when the time balance was paid in full would rest on plaintiff, to be accomplished at its New Jersey office. Although the record is not entirely clear, it would appear that the voluntary repossession of the vehicle and the subsequent resale by the seller giving rise to the deficiency took place at the seller's place of business in Pennsylvania.

brought in its courts. This should include the statute of limitations, even though such a course is contrary to the traditional common law conflicts rule that that matter is governed by the law of the forum, if that state has no borrowing statute (as is the case in New Jersey). See UCC §1–105(1) (*N. J. S.* 12A:1–105) and official comments 3 and 4. *Cf. Associates Discount Corp. v. Cary*, 47 *Misc. 2d* 369, 262 *N. Y. S. 2d* 646 (*Civil Ct. City of New York* 1965). If either this approach is taken or the parties' designation of Pennsylvania law is recognized, the result is the same and the question remains as to the applicability of UCC §2–725(1) to a deficiency suit.

The transaction here involved, despite the fictional form of a "bailment lease," is clearly under the law of Pennsylvania (Motor Vehicle Sales Finance Act, *Pa. Stat. Ann. title* 69, § 603(10); UCC *Pa. Stat. Ann. title* 12A, § 1–201(37)) an installment sale contract which simultaneously created a purchase money security interest.[2] The document is a combination, all-inclusive instrument, constituting both a contract for sale and a security transaction. The time balance, which the defendant-purchaser agreed to pay in 36 monthly installments, consisted of the cash price of the vehicle less a trade-in allowance plus insurance costs and finance charges. No note or other evidence of the secured debt was executed.

UCC § 2–725(1) is found in Article 2 of the Code, which is the article dealing with sales. It replaces the old Uniform Sales Act, which contained no special limitation of actions provision. The intended scope of Article 2 is specified in section 2–102:

---

[2] A secured transaction of this character in Pennsylvania is subject not only to the applicable provisions of the UCC, *Pa. Stat. Ann., title* 12A, § 9–101, *et seq.*, but also to the Motor Vehicle Sales Finance Act. The latter controls in the event of conflict. *Pa. Stat. Ann. title* 12A, § 9–203(2). (In New Jersey, under the code as adopted, such transactions are similarly subject to the Code, the Retail Installment Sales Law (*N. J. S. A.* 17:16C–1 through 94) and the Motor Vehicle Certificate of Ownership Law (*N. J. S. A.* 39:10–1 through 25). *N. J. S.* 12A:9–203(2) and 10–104).

"Unless the context otherwise requires, this Article applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this Article impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers."

(The instant transaction is not one disguised as a sale but intended to operate only as a security transaction.)

The official Code comment to this section reads:

"The Article leaves substantially unaffected the law relating to purchase money security such as conditional sale or chattel mortgage though *it regulates the general sales aspects of such transactions* * * *" (Emphasis supplied)

I can find no significant provisions in the article dealing with purchase money security interests or the realization and enforcement thereof.

All security transactions, on the other hand, whether created in connection with a sale or otherwise, are governed by Article 9 of the Code entitled "Secured Transactions * * *" and other special state statutes saved from repeal (such as the Pennsylvania Motor Vehicle Sales Finance Act). See sections 9–102, 107 and 113. The article replaces, *inter alia,* the former Uniform Conditional Sales Act. The rights, remedies and obligations of a purchase money security holder in the event of default, including repossession, resale and right of action for deficiency, are defined and controlled by Article 9 and the special saved statutes. It may be suggested that no Article 2 provision would apply since such matters are not "general sales aspects" of the transaction. Here such pertinent provisions are *Pa. Stat. Ann., title* 12A, §§ 9–503, 504, and 505 and *title* 69, §§ 623, 626 and 627 (the latter are similar to the provisions in New Jersey law). None of them contain any provision relating to time limitations on an action for a deficiency.

While there are as yet few reported decisions on the relation of the two articles, two cases may be pointed to as bear-

ing out the suggested distinction. In *Skinner v. Tober Foreign Motors, Inc.,* 345 *Mass.* 429, 187 *N. E.* 2d 669 (*Sup. Jud. Ct.* 1963), an airplane was sold under a conditional sale agreement, with the seller apparently retaining a security interest. The parties later orally reduced the price without consideration. The court said that the validity of such an alteration was governed by Article 2, rather than Article 9, since it related to the primary obligation. In *Associates Discount Corp. v. Cary, supra* (262 *N. Y. S.* 2d 646), a conditional sale contract was entered into in the District of Columbia, a non-code jurisdiction, repossession and resale took place in Massachusetts where the code was in force, and suit for the deficiency was brought in New York, likewise then a non-code state. The right to bring the deficiency suit was held to be governed by Article 9 of the Code, so the law of Massachusetts was applied. Since the Article 9 provisions relative to resale had not been complied with in Massachusetts, the court concluded the deficiency suit could not be maintained in New York.

This over-all structure of the Code would indicate that the statute of limitations provision in Article 2 was intended to apply only to actions particularly related to the sale itself, the primary transaction, such as claims for breach of warranty and the price of goods. The official comment to section 2–725 appears to bear out this thesis:

"Purposes:
To introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nation-wide scale whose contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred. This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice. This is within the normal commercial record keeping period."

I think there is considerable merit to the view that a suit for a deficiency, the amount of which is controlled by Article 9

and saved statutes, is not simply an action for the balance of the price of the goods.

None of the text writers seem to have adverted to the question and apparently the only cases dealing with section 2–725 to date concern its applicability to claims for personal injuries caused by product defects, which are not directly relevant here. Pennsylvania has held that the four-year provision of that section applies rather than the general two-year statute for injuries to the person on the theory that such claims are based on breach of warranty.[3] *Rufo v. Bastian-Blessing Co.*, 417 *Pa.* 107, 207 *A.* 2d 823 (*Sup. Ct.* 1965); *Gardiner v. Philadelphia Gas Works*, 413 *Pa.* 415, 197 *A.* 2d 612 (*Sup. Ct.* 1964). In a case involving a similar Pennsylvania cause of action upon which suit was brought in the federal court in Delaware, the court said that the section was only procedural and did not create a "built in" "substantive right." *Natale v. Upjohn Company*, 356 *F.* 2d 590 (3 *Cir.* 1966).

The result of the interpretation I have suggested also presents difficulties. It would mean that a suit for a deficiency would be governed by the general statute of limitations of the forum, which is ordinarily longer than four years, but that section 2–725(1) would apply if the security were disregarded and an action were simply brought either for the unpaid price or on a note given to evidence the debt. In any event, it would appear that, even if the suggested interpretation were incorrect, the four-year statute would still not apply where the suit for a deficiency developed out of a secured transaction unconnected with a sale. Legislative clarification might well be desirable.

If my suggested interpretation has merit, New Jersey's general statute of limitations would apply to the suit at bar. Whether that limitation is six years (*N. J. S.* 2A:14–1) or

---

[3] New Jersey now views such actions as grounded in strict liability in tort, rather than in breach of a warranty of sale. See *Cintrone v. Hertz Truck Leasing and Rental Service*, 45 *N. J.* 434 (1965). It would seem, therefore, that we would, despite our adoption of the code, probably still apply the general two-year statute.

sixteen years (*N. J. S.* 2A:14–4) depends on whether or not this combination instrument is for this purpose under seal. Under the generally accepted conflicts rule, this question is determined by the law of the forum. *Leflar, Conflict of Laws* (1959), *p.* 121; Goodrich, *Conflict of Laws* (4th *ed.* 1964), *p.* 152. By New Jersey law, this would not be a sealed instrument because the word "seal" appearing only after the buyer's signature is not recognized or adopted in the body of the document. However, this State does not follow the usual conflicts rule in this situation and holds instead that whether an instrument is under seal for the purpose of the statute of limitations is governed by the law of the place where the contract was made (here Pennsylvania). *McClellan v. F. A. North Co.,* 118 *N. J. L.* 168 (*E. & A.* 1937); cf. *Brisbin v. Bogoly,* 22 *N. J. Misc.* 399, 39 *A.* 2d 430 (*D. Ct.* 1944). By Pennsylvania common law, this contract would apparently be classified as one under seal. However, under UCC §2–203 (*Pa. Stat. Ann. title* 12A, §2–203) it would clearly not be. Again, this section is found in Article 2 relating to sales. But I would think that since the document is a combination contract of sale and security instrument, Pennsylvania would not consider it a sealed instrument as far as the security feature was concerned and at the same time disregard the seal with respect to the sale aspect. This would seem to be the rationale behind the only case dealing with the section. *Commonwealth Bank and Trust Co. v. Keech,* 201 *Pa. Super.* 285, 192 *A.* 2d 133 (*Super Ct.* 1963).

The New Jersey six-year statute of limitations would therefore be applicable. Since this suit was not commenced even within that period, I concur in the court's disposition of the case.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO.—6.

*For affirmance*—None.