887 P.2d 1250

**FIRST NATIONAL BANK IN ALBU-
QUERQUE d/b/a Southwest Card
Services, Plaintiff–Appellant,**

v.

**Linnie E. CHASE, a/k/a Linnie E.
Durham, Defendant–Appellee.**

**No. 21757.**

Supreme Court of New Mexico.

Dec. 21, 1994.

Louis J. Vener, P.C., Louis J. Vener, Albuquerque, for appellant.

Chavez & Chavez, David C. Chavez, Los Lunas, for appellee.

*OPINION*

FROST, Justice.

Plaintiff–Appellant, First National Bank in Albuquerque ("First National"), appeals from the district court's order dismissing its action as barred under the statute of limitations set out in NMSA 1978, Section 55–2–725 (Repl. Pamp.1993). First National sought to collect the balance remaining on an automobile installment purchase agreement after the automobile had been repossessed and sold. The district court held that the four-year statute of limitations on contracts for the sale of goods governed First National's claim. We affirm.

## FACTS

On April 3, 1986, Defendant–Appellee, Linnie Chase ("Chase"), purchased a Toyota pickup truck from Julian Garcia's Toyota City. Chase and the auto dealer entered into a "motor vehicle installment contract and security agreement" that provided for deferred payments on the balance and granted a security interest in the truck to the seller in order to ensure full payment of the purchase price. The dealer then sold and assigned the contract to First National.

Chase made her monthly truck payments to First National through October 19, 1987, but then defaulted on her November 19 payment. On December 8, 1987, First National accelerated the balance of the purchase price and repossessed the truck as provided under the terms of the contract. On March 1, 1988, First National sold the truck. The sale resulted in a deficiency of $6,889.12 in the balance due on the original contract. Over five years after default and repossession, First National filed suit against Chase to collect the deficiency.

## DISCUSSION

The issue on appeal is whether the statute of limitations for First National's deficiency action is governed by Article 2 of the Uniform Commercial Code, NMSA 1978, §§ 55–2–101 to 55–2–725 (Repl.Pamp.1993), which controls the sale of goods, or by Article 9 of the Uniform Commercial Code, NMSA 1978, §§ 55–9–101 to 55–9–507 (Repl.Pamp.1987),

which regulates security transactions. The statute of limitations under Article 2 provides, "(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." Section 55-2-725. Article 9 of the U.C.C., however, has no statute of limitations, so the general six-year statute of limitations for non-sales contracts, set out in NMSA 1978, Sections 37-1-1 and 37-1-3(A) (Repl. Pamp.1990), serves as the only potential time bar under that Article.[1]

The question whether Article 2 or Article 9 of the U.C.C. governs an action to recover a deficiency after a default on a motor vehicle installment contract has previously not been addressed in New Mexico. Several other jurisdictions have considered this issue, however, and their holdings are informative. The leading case on this issue is *Associates Discount Corp. v. Palmer*, 47 N.J. 183, 219 A.2d 858, 860–61 (1966), in which the New Jersey Supreme Court, applying Pennsylvania law, found that Section 2–725 of the Uniform Commercial Code governed the deficiency action. The court looked to the Pennsylvania Uniform Commercial Code because the defendant had purchased the automobile in Pennsylvania. At the outset, the New Jersey Supreme Court rejected the assertions that the automobile "bailment lease" assigned to the plaintiff was purely a security agreement and that the deficiency action was just a part of that security arrangement, independent of the original sale. Instead, the court found that the contract was a hybrid agreement, "constituting both a contract for sale and a security transaction." *Id.* The *Palmer* court then examined the nature of a deficiency suit, noting that it

is nothing but a simple *in personam* action for that part of the sales price which remains unpaid after the seller has exhausted his rights under Article 9 by selling the collateral; it is an action to enforce the obligation of the buyer to pay the full sale price to the seller, an obligation which is an essential element of all sales and which exists whether or not the sale is accompanied by a security arrangement.

*Id.* 219 A.2d at 861. Thus, the court concluded that a deficiency action is "more closely related to the sales aspect of a combination sales-security agreement rather than to its security aspect and [must] be controlled by the four-year limitation [in Section 2–725]." *Id.* Subsequent to the *Palmer* decision, nearly every other jurisdiction that has considered which time limitation applies to deficiency actions has adopted the same approach.[2]

First National, however, argues that Article 2 of the New Mexico Uniform Commercial Code should not apply to the contract at issue. For support, it points to the language of Section 55-2-102, which sets out the scope of the provisions of Article 2. Section 55-2-

---

**1.** Section 37-1-1 provides, "The following suits or actions may be brought within the time hereinafter limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially provided." Section 37-1-3(A) continues, in part, "Those founded upon any bond, promissory note, bill of exchange or other contract in writing, or upon any judgment of any court not of record, within six years."

**2.** *See, e.g., Worrel v. Farmers Bank of Del.*, 430 A.2d 469, 471–72 (Del.1980) (following the *Palmer* reasoning in applying Section 2–725 to deficiency actions); *Citizen's Nat'l Bank of Decatur v. Farmer*, 77 Ill.App.3d 56, 32 Ill.Dec. 740, 742, 395 N.E.2d 1121, 1123 (1979) (holding that a deficiency action is an action for the price and governed by Section 2–725); *Massey–Ferguson Credit Corp. v. Casaulong*, 62 Cal.App.3d 1024, 133 Cal.Rptr. 497, 499 (1976) (noting that the reasoning in *Palmer* is equally applicable in Cali-

fornia); *Chemical Bank v. Rinden Professional Ass'n*, 126 N.H. 688, 498 A.2d 706, 713 (1985) (holding Article 2 applicable to transactions in goods involving both a sale and a security agreement); Michael A. DiSabatino, Annotation, *Application, to Security Aspects of Sales Contract, of UCC § 2–725 Limiting Time for Bringing Actions for Breach of Sales Contract*, 16 A.L.R. 4th 1335 (1982) (listing jurisdictions that applied Section 2–725 to deficiency actions); *cf. Chaney v. Fields Chevrolet Co.*, 264 Or. 21, 503 P.2d 1239, 1241 (1972) (holding that an action for a deficiency is more closely related to the sales portion of the contract, but that an action by the defaulter to recover a surplus from the resale after foreclosure is more closely related to the security aspects of the contract). *But see North Carolina Nat'l Bank v. Holshouser*, 38 N.C.App. 165, 247 S.E.2d 645, 648 (1978) (holding Article 9, not Article 2, governs deficiency actions).

102 provides, in part, "Unless the context otherwise requires, this article applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or [a] present sale is intended to operate only as a security transaction." First National contends that the principal and dominant purpose of the obligation it purchased from the seller was for financing the truck purchase and for securing the installment payments, and did not involve the sale of the truck.

This contention, however, mischaracterizes the nature of the agreement at issue. We first note that Chase entered into the motor vehicle installment contract and security agreement with the truck dealer, not with First National. First National did not loan money to Chase to pay the seller the purchase price. Instead, First National purchased an assignment of the right to collect on an installment contract in conjunction with a security agreement. First National would have us judge the financing aspect of the contract as discrete and independent from the sale of the truck. However, as the court in *Citizen's National Bank of Decatur v. Farmer* noted, in a contract for sale, "[t]he sale consists of the passing of title to the buyer for a price. The obligation to pay is a fundamental part of the contract for sale. It is not, as plaintiff suggests, separate and distinct from the transfer of the physical possession of the automobile." 77 Ill.App.3d 56, 32 Ill.Dec. 740, 742, 395 N.E.2d 1121, 1123 (1979) (citation omitted).

We also note that, in this case, First National provided the "installment contract and security agreement" forms used by the dealer, and clearly benefitted from being closely linked to the dealer in the sale. By holding itself out to the dealer as a ready source for financing auto sales, First National gained a competitive advantage over other financial institutions in obtaining automobile-loan obligations from Chase and other customers of the dealer. Now First National asks us to find that it is unconnected with the sale and to treat the agreement the same as if it were an auto loan to a third party for the purchase price.

The contract which Chase and the auto dealer entered into was clearly a hybrid involving both sales and security aspects, as was the case in both *Palmer* and *Farmer*. The fact that the contract was later assigned to First National does not change the nature of the agreement. The *Palmer* court held that Article 2 applies to the sales elements of such agreements, and the New Mexico Uniform Commercial Code compels a similar result. The Official Comment to Section 55–2–102 provides, in part, "[A]rticle [2] leaves substantially unaffected the law relating to purchase money security such as conditional sale or chattel mortgage *though it regulates the general sales aspects of such transactions.*" Section 55–2–102 cmt. (emphasis added). Article 2 would therefore control the general sales aspects of the contract at issue. Furthermore, as set out in *Palmer*, a deficiency action is essentially an action for the price and is, therefore, part of the general sales aspect of the agreement. Thus, the four-year statute of limitations set out in Section 55–2–725 governs First National's deficiency claim.

First National also relies on *North Carolina National Bank v. Holshouser*, 38 N.C.App. 165, 247 S.E.2d 645 (1978) as authority contrary to *Palmer*. The court in *Holshouser* reached a conclusion opposite to *Palmer* under a similar set of facts, holding that Article 9, not Article 2, governed the statute of limitations for a deficiency action. *Id.* 247 S.E.2d at 648. The *Holshouser* court interpreted the provisions of Article 2 as establishing that the sales aspect of the purchase was completed upon the signing of the contract. Therefore, it found that Article 2 did not apply to any later actions for a deficiency. However, in reaching that conclusion, the court focused on the limiting language of the North Carolina comment to U.C.C. 2–102. The comment provided, "This section sets out the scope of the Code, limiting it to transactions in goods … and indicates that the article on sales does not apply to transactions intended as security even though in the form of an unconditional contract of sale or to sell." *Id.* 247 S.E.2d at 646. The *Holshouser* court concluded that the North Carolina Comment, in conjunction with a prior legislative amendment to the statute of limitations for sealed instruments,

demonstrated the legislature's intent to narrow the application of Article 2, and to require "deference to Article 9 where a security interest is involved." *Id.* at 647. Noting that the intent of the North Carolina Legislature was "precisely contrary" to that of the Pennsylvania Legislature in *Palmer*, the *Holshouser* court elected not to follow *Palmer. Id.* 247 S.E.2d at 648.

The New Mexico Uniform Commercial Code, however, has no similar comment and expresses no such legislative intent to limit the application of Article 2 when a security agreement is also present. Therefore, we find *Holshouser* to be inapplicable to New Mexico deficiency actions, and instead follow the reasoning expressed in *Palmer*. Accordingly, we hold that Section 55–2–725 sets out the appropriate statute of limitations, and that First National's deficiency action was barred as being commenced more than four years after the cause of action accrued.

We note that Chase has requested reasonable attorney fees as provided for under NMSA 1978, Section 39–2–2 (Repl. Pamp.1991). Section 39–2–2 allows the court, at its discretion, to grant attorney fees to the prevailing debtor in a deficiency action. Chase, however, failed to make a request for attorney fees under Section 39–2–2 before the trial court. Because the discretion of the trial court was never invoked with regard to attorney fees, we find no basis for altering the trial court's order. Accordingly, we deny Chase's request for attorney fees for the trial court proceedings. We do, however, award Chase $1,500 for attorney fees incurred in this appeal.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court and award the Defendant–Appellee attorney fees for this appeal.

**IT IS SO ORDERED.**

BACA, C.J., RANSOM, J., and MINZNER, J., concur.

FRANCHINI, J., dissents.

FRANCHINI, Justice (dissenting).

I respectfully dissent. The opinion readily acknowledges that Article 9 applies to the contract because the car is collateral and the contract is a security agreement. In my view, the longer statute of limitations should apply because the transaction between the parties was not just a simple car sale in which the seller was immediately paid all money due. When the *Bank* agreed to get involved in the financing of the car, the Article that applies to its involvement should be the one that controls its right to maintain an action. The parties entitled the contract a "security agreement," thus the debtor should not be surprised that the longer statute of limitations applying to secured transactions controls instead of the one pertaining to simple sales.

Further, the contract under which the Bank bases its claim is the *security transaction,* not the bill of sale. Section 55–2–102 states that Article 2 does not apply to contracts (like this one) intended to operate as security agreements. Significantly, the Bank had the right to take possession of the collateral upon default without judicial process under Article 9, *see* § 55–9–503, and to sell it under Section 55–9–504—not under Article 2. The deficiency arose out of the default under the security agreement and subsequent sale. For these reasons, the six-year statute of limitations should apply.

Finally, we have long held that the law favors the right of action over a limitation. *See Slade v. Slade,* 81 N.M. 462, 463, 468 P.2d 627, 628 (1970). I believe we should follow the lead of the Montana Supreme Court in holding that when there is a question of which of two statutes of limitation should apply, the question should be resolved in favor of the longer statute. *See Thiel v. Taurus Drilling Ltd. 1980–II,* 218 Mont. 201, 710 P.2d 33, 40 (1985). As a matter of public policy, it seems wiser to encourage banks and similar institutions to help economically stressed individuals to purchase essential items like automobiles by allowing the institutions to benefit from the longer statute of limitations. Applying the longer statute puts

no additional hardship on the debtor who has reneged on his promise to pay.