791 A.2d 1041

FORD MOTOR CREDIT COMPANY, PLAINTIFF–RESPONDENT,
v. GILBERTO ARCE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 4, 2002—Decided February 26, 2002.

Before Judges HAVEY, COBURN and WEISSBARD.

*Gail Chester* argued the cause for appellant (Middlesex County Legal Services Corp., attorneys; *Ms. Chester*, of counsel and on the brief).

*Carey A. Aquilina* attorney for respondent (*Hayt, Hayt & Landau*, attorneys; *Ms. Aquilina* and *F. John Caldwell, Jr.*, of counsel and on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

Defendant Gilberto Arce appeals from an order for summary judgment in favor of plaintiff Ford Motor Credit Company (FMC) awarding it $5,905.96 plus costs, representing a deficiency owed by defendant under a retail installment contract executed by him to finance the purchase of a used car. The sole issue is whether FMC's suit is barred by the four-year statute of limitations under Article 2 of the Uniform Commercial Code, *N.J.S.A.* 12A:2–725 (§ 2–725). Following the Supreme Court's holding in *Assocs. Discount Corp. v. Palmer*, 47 *N.J.* 183, 219 *A.2d* 858 (1966), we conclude that the action is barred and accordingly reverse.

The central facts are undisputed. On January 31, 1994, defendant purchased a 1988 Dodge van from Liccardi Motors Inc. for a price of $7,928.70. As part payment, defendant executed a retail installment contract financing a total of $7,750.59. The agreement provided for thirty-five monthly payments of $333.04. The agreement was assigned to FMC.

At some point defendant defaulted on the payments due under the contract and, on March 21, 1995, he voluntarily surrendered

the vehicle to FMC. FMC sold the vehicle at public auction for $3,195.

On September 29, 2000, approximately five and one-half years after defendant defaulted, FMC filed an action seeking to recover the deficiency owed under the retail installment contract. FMC moved for summary judgment. Defendant cross-moved for summary judgment and requested oral argument, claiming that FMC's suit was barred by the four-year statute of limitations under § 2–725. Without a hearing and without making any findings, the trial court granted summary judgment to FMC.

■ Before addressing the substantive issue before us, we find it necessary to comment on the trial court's failure to make any findings in this case or place on the record any reasons whatsoever supporting the grant of summary judgment in favor of FMC. The obligation to do so is clear. *Rule* 4:46–2(c) directs that, in deciding a summary judgment, "[t]he court shall find the facts and state its conclusions in accordance with *R.* 1:7–4." A trial court "is obliged to set forth factual findings and correlate them to legal conclusions. Those findings and conclusions must then be measured against the standards set forth in *Brill v. Guardian Life Insurance Co. of America,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995)." *Great Atlantic & Pacific Tea Co., Inc. v. Checchio,* 335 *N.J.Super.* 495, 498, 762 *A.*2d 1057 (App.Div.2000). As we stated in *Great Atlantic & Pacific Tea Co., supra,* "neither the parties nor we are well-served by an opinion devoid of analysis or citation to even a single case." *Ibid.*

■ Article 2 of the Uniform Commercial Code (U.C.C.) applies to "transactions in goods." *N.J.S.A.* 12A:2–102. Article 2's statute of limitations, § 2–725(1), provides that "[a]n action for breach of any contract for [the] sale [of goods] must be commenced within four years after the cause of action has accrued." A cause of action accrues "when the breach occurs...." § 2–725(2).[1]

---

[1] A suit for failure to pay on a transaction for goods accrues under § 7–725 on the date the payment is due. James J. White and Robert S. Summers, *Scope of*

FMC apparently persuaded the trial court that its action to recover the deficiency owed under the retail installment contract was governed by *N.J.S.A.* 2A:14–1, which provides for a six-year statute of limitations in breach of contract cases. FMC's position is articulated in its appellate brief as follows:

> This is not an action based upon the sale of goods. This is an action based upon the deficiency on a retail installment contract (Defendant borrowed money from Plaintiff, a lender). It is simply not an action for the balance of the price of goods or damages for economic loss due to the sale of goods. Further, Defendant's deficiency due under the retail installment contract is unrelated to the sale of the vehicle itself. Rather, the deficiency is due to Defendant's failure to make payments on the contract.

However, our Supreme Court in *Palmer, supra,* 47 *N.J.* at 187, 219 *A.*2d 858, addressed the precise issue before us. In that case, defendant had purchased a vehicle and financed it by executing a "Bailment Lease Security Agreement." *Id.* at 185, 219 *A.*2d 858. The Court held that plaintiff's suit to recover a deficiency after breach was barred under § 2–725 because a deficiency suit is essentially an action to recover monies due for the sale of goods. *Id.* at 187, 219 *A.*2d 858. The Court rejected the concurring judge's view that such an action is not governed by § 2–725 because it is part of a "security arrangement between the parties rather than an incident of the sales aspect of their agreement." *Ibid.* The Court responded:

> we think this view mistakes the true character of a deficiency suit. Such a suit is nothing but a simple *in personam* action for that part of the sales price which remains unpaid after the seller has exhausted his rights under Article 9 [of the U.C.C.] by selling the collateral; it is an action to enforce the obligation of the buyer to pay the full sale price to the seller, an obligation which is an essential element of all sales and which exists whether or not the sale is accompanied by a security arrangement.
>
> [*Ibid.*]

The Court added:

> a deficiency action must be considered more closely related to the sales aspect of a combination sales-security agreement rather than to its security aspect and be

---

*Article 2 Warranties,* 1 *U.C.C.* § 9–1 at 478 (4th Ed.1995). In this case it is undisputed that defendant breached the agreement at some point before March 21, 1995, when he surrendered the vehicle to FMC.

controlled by the four year limitation in ... § 2–725.[2]

[*Id.* at 187–88, 219 *A.*2d 858.]

The *Palmer* decision has been cited with approval by courts in other jurisdictions. *See First Nat'l Bank v. Chase,* 118 *N.M.* 783, 887 *P.*2d 1250, 1251–53 (1994); *Scott v. Ford Motor Credit Co.,* 345 *Md.* 251, 691 *A.*2d 1320, 1323–26 (1997). In our view, *Palmer* is dispositive.

Nevertheless, FMC argues that *Palmer* was overruled by the Legislature when, five years after the decision, it amended New Jersey's Retail Installment Sales Act, *N.J.S.A.* 17:16C–1 to –103, by enacting *L.* 1971, c. 399, § 3, codified as *N.J.S.A.* 17:16C–38.2 (§ 38.2). That provision states in applicable part as follows:

No retail installment contract shall require or entail the execution of any note unless such note shall have printed the words "CONSUMER NOTE" in 10 point bold type or larger on the face thereof. Such a note with the words "CONSUMER NOTE" printed thereon shall be subject to the terms and conditions of the retail installment contract and shall not be a negotiable instrument within the meaning of chapter 3 (Negotiable Instruments) N.J.S. 12A:3–101 et seq., or a security interest within the meaning of chapter 9 (Secured Transactions) N.J.S. 12A:9–101 et seq. of the Uniform Commercial Code. Any subsequent holder of a consumer note shall be subject to all claims and defenses of the retail buyer against the retail seller arising out of the transaction....

Citing the language in § 38.2 which states that a "Consumer Note" shall not be deemed a negotiable instrument under Article 3, or a security interest under Article 9 of the U.C.C., FMC argues that § 38.2 overruled the *Palmer* decision because the section "specifically took installment sales contracts out of the U.C.C. forum." We do not agree.

Section 38.2 regulates "Consumer Note[s]" which buyers may be required to execute as part of a retail installment transaction; it does not address retail installment contracts themselves. De-

---

[2] Section 2–102, which provides that Article 2 "applies to transactions in goods," also states that it does not apply "to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate *only* as a security transaction...." (Emphasis added). The *Palmer* Court noted that "[n]othing in ... § 2–102" changes the result it reached because that section "excludes from Article 2 those dealings designed to operate *only* as security transactions...." *Palmer, supra,* 47 *N.J.* at 188, 219 *A.*2d 858.

fendant in this case did not execute a Consumer Note. Moreover, § 38.2 refers to the nonapplicability of Articles 3 and 9; it does not refer to Article 2, governing transactions in goods, where the four-year statute of limitations under § 2–725 is found. It therefore cannot be said that the Legislature, by enacting § 38.2, either explicitly or implicitly intended to overrule the *Palmer* holding that a deficiency suit on a transaction equivalent to a retail installment contract is governed by § 2–725. *See State v. Dalglish*, 86 *N.J.* 503, 512, 432 *A.*2d 74 (1981) ("[i]n the absence of a clear manifestation to the contrary, we shall not impute to the Legislature an intention to change established law").

■ Indeed, the legislative goal in enacting § 38.2 was to protect consumers, and nothing more. That intention is gleaned from the language of the section itself which provides that "[s]uch a note with the words 'CONSUMER NOTE' printed thereon shall be subject to the terms and conditions of the retail installment contract. . . ." The Legislature's intention is also made clear from the legislative history. When signing *L.* 1971, c. 399 (§ 38.2), Governor Cahill declared that the enactment "removes the 'holder in due course doctrine' from retail installment sales contracts." He added:

> This bill permits the consumer to assert his legitimate defense against holders of installment sales contracts and supplements earlier state legislation in this field. Under existing law, the consumer who signs a note in the course of purchasing goods or services must continue to make payments to the holder of that note even though he has a legitimate complaint against the seller for having received defective goods or goods in the amount or quality represented.
>
> [Assembly Comm., *Amendments to Assembly Bill No. 623* (1971).]

We hold that the four-year statute of limitations under § 2–725 applies in this case. Accordingly, FMC's deficiency suit is statutorily barred. We therefore reverse the judgment in favor FMC's favor.

Reversed.