Philip R. WORREL, Defendant
Below, Appellant,

v.

FARMERS BANK OF the STATE OF
DELAWARE, a Corporation of the
State of Delaware, Plaintiff Below, Ap-
pellee.

Supreme Court of Delaware.

Submitted Dec. 11, 1980.*

Decided May 5, 1981.

* Resubmitted on supplemental memoranda:
April 13, 1981.

Louis B. Ferrara of Aerenson, Balick & Ferrara, Wilmington, for defendant below, appellant.

Edward T. Ciconte of D'Angelo & Ciconte, Wilmington, for plaintiff below, appellee.

Before DUFFY, QUILLEN and HORSEY, JJ.

HORSEY, Justice:

This appeal concerns the timeliness of a creditor's suit for a deficiency balance following debtor's breach of an installment sale security agreement and creditor's repossession and sale of the secured property. The question presented is whether the applicable statute runs: (1) from date of debtor's initial default as to an installment payment; (2) from date of creditor's exercise of its option to declare debtor's whole obligation to be immediately due; or (3) from date of creditor's repossession sale and determination that a deficiency exists.

The trial court, the Court of Common Pleas, New Castle County, following an evidentiary hearing, granted judgment for Philip R. Worrel, the debtor-defendant, on the claim of Farmers Bank of the State of Delaware (Bank), the creditor-plaintiff. In a bench ruling, the Court apparently accepted the four-year limitation of 6 *Del.C.* § 2–725 as the applicable statute and held that the Bank's suit was time-barred.[1]

On Bank's appeal to Superior Court, that Court affirmed the trial court's ruling as to the applicable statute of limitations, 6 *Del.C.* § 2–725,[2] but reversed as to the timeliness of the suit. Superior Court ruled that § 2–725 did not begin to run until the date of Bank's sale of the repossessed automobile. Since the sale had occurred within four years of the filing of suit, the Court ruled the Bank's suit to be timely under § 2–725 Worrel then docketed this appeal.

The parties now agree that the applicable statute of limitations is 6 *Del.C.* § 2–725.[3] Their sole disagreement is over when the four-year limitation of § 2–725 begins running as to the Bank's deficiency claim. We hold that Bank's claim for recovery of a deficiency balance for Worrel's breach of the sales-debt instrument accrued and the four-year limitation of 6 *Del.C.* § 2–725 began to run from the date following debtor's default that Bank, by word or conduct, evidenced its intent to exercise its option to declare debtor's remaining obligations to be immediately due.

---

1. However, the record does not indicate that counsel focused on the question as to precisely when the four-year time limitation of § 2–725 began to run or that the Court made any ruling on the question.

2. 6 *Del.C.* § 2–725 provides in pertinent part as follows:

    (1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitations to not less than one year but may not extend it.

    (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach....

3. The Bank argued in the Superior Court (a) that no statute of limitations applied because the instrument sued upon was a security agreement under seal; and (b) that otherwise the *three-year* limitation of 10 *Del.C.* § 8106 applied but was tolled by a February 1973 partial payment by Worrel which the trial court erro-

neously refused to recognize. Worrel responded that the instrument sued on was a "Contract for Sale" under 6 *Del.C.* § 2–106; that 6 *Del.C.* § 2–203 expressly foreclosed the Bank's sealed instrument argument; and that the applicable limitation was the sales limitation found in 6 *Del.C.* § 2–725. Bank then conceded that if the instrument sued upon was governed by Article 2 of the Delaware Commercial Code, then the four-year limitation of § 2–725 applied. However, Bank argued that the Agreement between the parties involved a security transaction that was governed by Article 9 of the Commercial Code; and since Article 9 contains no limitations, the suit's timeliness was to be determined under general legal principles applicable to suits upon sealed instruments. On appeal, Bank now acquiesces in the Superior Court's ruling that the transaction in question is controlled by Article 2 of the Commercial Code and agrees that the applicable limitations in 6 *Del.C.* § 2–725.

## I

The pertinent facts are that on October 26, 1972, Philip R. Worrel, defendant-appellant, purchased an automobile from William H. Porter, Inc. (Porter) through financing arranged by Porter with Farmers Bank of the State of Delaware. Under the written agreement entered into by the parties titled, "Purchase Money Security Agreement"[4] (Agreement), Worrel agreed to pay Farmers Bank (assignee of Porter) the balance of the purchase price, including financing and other charges, over three years in 36 equal consecutive monthly installments of $156.08 with the first such monthly installment due December 10, 1972.

The record is clear that Worrel made the initial payment due December 10, 1972; but the record is unclear as to all the events that followed. The Bank contended and attempted to prove at trial that Worrel made a second partial payment of $56.08 in February 1973. However, Worrel denied making any later payment, and the trial court expressly found that the December 10 payment was the only payment made by Worrel.

Farmers Bank repossessed the automobile on March 28, 1973 and sold it on May 2, 1973 at public sale for a net sum of $2,650. After crediting this amount against Worrel's obligations under the Agreement, the Bank determined that there was a deficiency balance of $1,924.62. However, Farmers Bank did not file suit against Worrel to collect such balance until January 13, 1977.

Worell answered the suit by denying liability and pleading that the suit was time barred.

## II

Superior Court, responding to the initial question as to the applicable statute of limitations, concluded that Article 2, rather than Article 9, of the Commercial Code controlled the contractual rights of the parties. From this it followed that the four-year "sales" limitation of 6 *Del.C.* § 2–725 controlled the timeliness of the Bank's suit; and Superior Court so held. In reaching this result, the Court relied heavily upon *Associates Discount Corp. v. Palmer*, 47 N.J. 183, 219 A.2d 858 (N.J.Supr., 1966). *Palmer* presented the same question as the instant case, namely, the timeliness of a creditor's suit to collect a deficiency balance following repossession and sale of debtor's automobile purchased under a "Bailment Lease Security Agreement." The New Jersey Supreme Court held that the four-year "sales" limitation of Pennsylvania's Commercial Code (Pa.Stat.Ann. 12A § 2–725) controlled, rejecting the contention that the deficiency action was based on the security arrangement between the parties rather than the sales aspect of their agreement.[5]

We agree with the Court's initial rulings that Article 2, the sales article of the Uniform Commercial Code (6 *Del.C.* § 2–101 through 2–725), controlled the contractual rights of the parties and that § 2–725 was the applicable statute of limitations.[6] And

---

**4.** The Agreement is variously referred to by the parties as "a sales agreement and purchase money security agreement" by Worrel and "an installment sales contract" by the Bank. Regardless of its nomenclature, the instrument incorporated both the terms of an agreement of sale by installment purchase, with title retained in seller as the secured party, and a security arrangement (denominated a "purchase money security interest") granted seller and its assigns in the automobile which was the subject of the agreement.

**5.** The Court reasoned, "[A deficiency] suit is nothing but a simple *in personam* action for that part of the sales price which remains unpaid after the seller has exhausted his rights under Article 9 by selling the collateral; it is an action to enforce the obligation of the buyer to

pay the full sale price to the seller, an obligation which is an essential element of all sales and which exists whether or not the sale is accompanied by a security arrangement. [Footnote and citation omitted.] Thus, because of the absence of a contrary indication anywhere in the Code, a deficiency action must be considered more closely related to the sales aspect of a combination sales-security agreement rather than to its security aspect and be controlled by the four-year limitation in Pa. Stat.Ann. tit. 12A, § 2–725." 219 A.2d at 861.

**6.** In its unreported decision, the Court below stated, "I conclude that here the sale was the dominant characteristic of the transaction and, therefore, the provisions of Article 2 of the Uniform Commercial Code control the contrac-

we agree with the Court's reasoning to reach that result which was largely premised on *Palmer*. (As previously stated, the Bank concedes on appeal the correctness of the Court's determination that the Bank's deficiency action is controlled by 6 *Del.C.* § 2–725.) However, we cannot agree with the Court's ultimate ruling that the four-year limitation period of § 2–725 did not begin to run on the Bank's deficiency claim against Worrel until the amount of the deficiency balance was established by the Bank's sale of the repossessed automobile.[7]

*First,* the ruling is inconsistent with the Court's rationale (as elaborated upon in *Palmer,* see footnote, p. 471) for finding Article 2 rather than Article 9 to control the parties' contractual rights and the applicable limitations on the Bank's suit. By ruling that the Bank's deficiency claim did not accrue, for limitation purposes, until a deficiency was established, the Court focused, improperly we think, upon the security aspects of the Agreement.[8] For the Court had previously ruled, correctly we think, that the sales aspect of the transaction controlled the parties' security rights as well.

Indeed, our Commercial Code fairly clearly states that a seller's retention of a security interest under a sales transaction does not remove the transaction from the operation of Article 2 of the Uniform Commercial Code. Section 2–102 excludes from the operation of Article 2 only those transactions in goods which are "intended to operate only as a security transaction...." The Delaware Study Comment to § 2–102 states,[9]

> This section, like § 75 of the Uniform Sales Act (6 *Del.C.* § 775), excludes from coverage of the Sales Article transactions which are actually security transactions but which are disguised in the 'form' of the sale. However, since the section merely excludes transactions which are intended to operate only as security transactions, actual sales transactions in which the seller also retains a security interest are covered by this chapter ....

■ *Second,* the language of 6 *Del.C.* § 2–725 as to the accrual of a cause of action under Article 2 cannot be reconciled with the Court's ruling that the Bank's claim for a deficiency balance did not accrue until the Bank's repossession sale of the automobile. Indeed, the Court below did not attempt to relate or reconcile its holding with the language of § 2–725. The Statute expressly provides that an action thereunder "must be commenced within 4 years after the cause of action has accrued" and that "[a] cause of action accrues when the breach occurs...." This is in accord with general law as to the accrual of actions for breach of contract; that is, "... a right of action accrues and the Statute begins to run at the time the contract is broken, not at the time when actual damage results or is ascertained...." 51 *C.J.S. Limitations of Actions,* § 126. *See Keller v.*

tual rights of the parties, including the right to recover the sum due under the contract."

**7.** The Court's holding was as follows: "I conclude that in a suit to recover the balance due after repossession and sale of the secured property the amount to be recovered is not ascertained until the repossession sale has occurred and, hence, the statute of limitations commences when the balance is established by sale of the secured property."

**8.** In *Palmer, supra,* the Court discredited the argument that a creditor was required to foreclose his security interest before obtaining a "deficiency judgment." The Court stated, "In *fact, a seller* may get his 'deficiency judgment' *before* foreclosing his security interest or *before* deciding whether or not such a foreclosure

would even be necessary or desirable. By reducing his total claim on the sales contract to judgment prior to foreclosure, a subsequent deficiency action becomes unnecessary should the collateral be insufficient to satisfy the buyer's debt. Cf. Pa.Stat.Ann. tit 12A, § 9–501(1) and (5); Pa.Stat.Ann. tit. 12A, § 9–504(2)." 219 A.2d at 861, n.2. 6 *Del.C.* § 9–501(1) and (5) similarly so provide.

**9.** The Court in *Palmer* similarly relied on § 2–102 of the Pennsylvania sales statute, which is identical with § 2–102 of the Delaware statute, and the "official comments" of the Pennsylvania Bar Association to § 2–102 which are to the same effect as the Delaware Study Comment.

*President, Directors and Company, etc.*, Del. Super., 24 A.2d 539 (1942); *Bradford Inc. v. Travelers Indemnity Co.*, Del.Super., 301 A.2d 519 (1972).

While *Palmer, supra,* did not precisely decide when the four-year limitation of § 2–725 began to run on a suit to collect a deficiency balance under a transaction substantially similar to the instant case, the Court clearly rejected the contention that such an action was not governed by the sales statute of limitations, § 2–725. As the court stated, a suit for a deficiency judgment is nothing more than "an action to enforce the obligation of the buyer to pay the full sale price to the seller." 219 A.2d at 861.

*North Carolina Nat'l Bank v. Holshouser*, N.C.App., 38 N.C.App. 165, 247 S.E.2d 645 (1978) reaches a result contrary to *Palmer*. There the Court held a creditor's deficiency action following repossession and sale of a secured automobile to be controlled by a ten-year statute of limitations governing sealed instruments rather than by the four-year "sales" limitation of § 2–725 of the North Carolina Uniform Commercial Code. However, the Court's holding was premised on legislative intent (based on Commentary to § 2–102 of the North Carolina Commercial Code) that the sales article should apply only to the sales aspect of the transaction and that Article 9 of the Code should apply to security aspects of the transaction, as

reflected in the parties' purchase money security agreement.[10] While not disagreeing with the rationale of *Palmer*, the Court in *Holshouser* found the North Carolina legislative intent within North Carolina sales § 2–102 to be "precisely contrary to that of the Pennsylvania Legislature." 247 S.E.2d at 648. Thus, the Court concluded that while the time limitations of § 2–725 should apply to the sales aspect of the transaction, Article 9 should apply to its security aspects.[11, 12]

■ Relating the above authorities to the Delaware Uniform Commercial Code, in particular § 2–102, and notwithstanding counsel's concession, we conclude that Article 2 controls this deficiency action and, therefore, the four-year limitation of § 2–725 applies to this suit for breach of what is essentially a sales agreement.

### III

We next take up when the four-year limitation of § 2–725 began to run as to this deficiency claim. Worrel makes two contentions: (1) Bank's claim being for breach of contract, its claim accrued immediately upon Worrel's first breach of the Agreement; and (2) that the Agreement was breached by him as early as December 10, 1972 and no later than January 10, 1973, the due date for the second installment payments that was not made.

10. The Official Comment to North Carolina § 2–102 stated that Article 2 "leaves substantially unaffected the law relating to purchase money security such as conditional sale or chattel mortgage though it regulates the general sales aspects of such transactions." And the North Carolina Comment then added, "This section [2–102] sets out the scope of the Code, limiting it to transactions in goods ... and indicates that the article on sales does not apply to transactions intended as security even though in the form of an unconditional contract of sale or to sell...."

11. Since Article 9 lacked any statute of limitations, the Court applied its 10 year statute of limitations on sealed instruments.

12. *Palmer* was also not followed in *Chaney v. Fields Chevrolet Co.*, 264 Or. 21, 503 P.2d 1239 (Or.Supr.1972) (action by buyer to recover surplus from seller-secured party following a defi-

ciency sale of repossessed property). Ruling that the Oregon four-year "sales" limitation (ORS 72, 7250) was "not intended to cover the present situation," the Court held that buyer's suit was governed by the provisions of Article 9 relating to a secured party's duty to account (§ 9–504(2)) and thus by a general six-year statute of limitations. The Court also found the statute tolled by seller's failure timely to disclose the surplus from the sale. However, the Court stated, "Although an action for part of the purchase price is more closely related to the sale portion of the contract than it is to the security portion, it is obvious that an action to recover a surplus from the resale of the article upon an agreed foreclosure is more closely related to the security aspects of the contract than it is to that part which concerns the original sale." 503 P.2d at 1241.

The Bank counters (1) that Superior Court properly held that an action for a deficiency balance does not accrue, and the four-year limitation of § 2–725 did not begin to run until repossession and resale established the amount of the deficiency; and (2) alternatively, that § 2–725 was tolled by the Bank's evidence of a partial payment made by Worrel on February 21, 1973, evidence which it argues the trial court erroneously rejected. However, Bank cannot prevail on its "tolling" argument because the trial court's finding of Bank's lack of proof of a partial payment was not clearly erroneous.

Bank does not argue that under the terms of the instrument Worrel's default as to a particular installment payment did not trigger the running of the four-year limitation under § 2–725 on a claim for immediate payment of the remaining unpaid obligations unless and until Bank elected to pursue such a remedy, either by express declaration or conduct evidencing such an election.

### A.

■ Under the instrument before us, we conclude that the four-year limitation of § 2–725 began to run on Bank's claim for a deficiency judgment upon the occurrence of two events: (1) Worrel's breach of the agreement; and (2) Bank's action either declaring the loan balance to be immediately due and payable or conduct evidencing such a declaration, such as repossession of the secured automobile. We reject Worrel's contention that § 2–725 began to run on the Bank's claim for the entire unpaid balance of the purchase price from the date of Worrel's initial default on an installment payment; and we reject Bank's argument that § 2–725 did not begin to run on the Bank's claim for a deficiency balance until Bank's resale of the secured automobile following repossession.

■ Worrel's argument that he breached the Agreement as early as December 10, 1972 is clearly without merit. By making the installment payment due on that date, Worrel was in compliance with the Agreement as to his first installment payment; and he remained in compliance until January 10, 1973 when he failed to make the second installment payment due under the Agreement. Such failure constituted an "event of default" under the terms of the Agreement entitling Bank to sue for the delinquent installment sum;[13] and as to that installment sum the time limitation of § 2–725 then began running. However, under the terms of the Agreement, Worrel's remaining installment obligations did not become immediately due and payable until Bank, following Worrel's default, exercised its option to accelerate the remaining obligations and thereby "call" the loan.[14] The Agreement so provides:

> REMEDIES ON DEFAULT: In the event of default hereunder, Secured Party, at its option, may declare all of the obligations secured hereby to be immediately due and payable and shall have all of the rights and remedies of a Secured Party under the Delaware Uniform Commercial Code and under any other applicable law....

This result is in accord with general law as to the accrual of an applicable statute of

---

**13.** The Agreement provides, in pertinent part: "EVENTS OF DEFAULT: Debtor shall be in default under this contract upon the happening of any of the following: (1) Default in payment or performance of any obligation or covenant or warranty contained or referred to herein; (2) ....; or (7) if Secured Party should, in good faith, deem itself, its security interest or collateral unsafe or insecure; or believe that the prospect of payment or other performance is impaired."

**14.** Other provisions of the Agreement support a construction that debtor's failure to make an installment payment does not, without more, accelerate the remaining installment obligations or constitute a default as to all the remaining obligations under the Agreement. The instrument provides for a "Default Charge for Late Payment" of any installment not paid within 10 days of the due date. The instrument further permits the Secured Party to accept a late payment or a partial payment, without prejudice to the "Debtor's obligations or Secured Party's rights ... with respect to any subsequent payments or default therein; ..."

limitations for breach of an installment sales agreement. 67 *Am.Jur.2d, Sales,* § 538, pp. 724, 725; and 51 *Am.Jur.2d, Limitation of Actions,* § 127 at pages 696, 697.

▮ The record in this case does not indicate whether the Bank, following Worrel's failure to make the installment payment due January 10, 1973, gave Worrel any formal notice of its declaration to accelerate the remaining installment obligations. However, the Bank's action in repossessing the secured automobile from Worrel on March 28, 1973 evidences the Bank's decision after January 10, 1973 to declare the entire loan to be in default. Since suit was filed by the Bank on January 13, 1977, we think the only reasonable inference from the record before us is that the action was timely filed under § 2–725, that is, within four years of the Bank's election of a default remedy or conduct evidencing such an election; and we so hold.

### B.

The contention that the time limitation of § 2–725 did not begin to run until a deficiency was established by resale of the secured property following repossession was made as to the California Commercial Code and rejected in *Massey-Ferguson Credit Corp. v. Casaulong,* Cal.App., 62 Cal.App.3d 1024, 133 Cal.Rptr. 497 (1976). Following *Palmer, supra,* the California Appellate Court based its ruling in large part on the California Code language of § 2102 which is the equivalent of § 2–102 of the Delaware Commercial Code and the like section of the Pennsylvania Code.[15] Finding that the instrument sued upon was not only a security agreement but also a sales contract, the Court relied upon the Official Commentary to Code § 2–102 to conclude that the sales article controlled the security aspects of the Agreement, including the collection of any deficiency. Apparently the Court below misread *Massey-Ferguson*; for it cited *Massey-Ferguson* as supportive of its holding that the limitation period under § 2–725 did not begin to run until repossession sale established a deficiency balance.[16]

The *Massey-Ferguson* holding[17] that the time limitation of § 2–725 runs from the date of debtor's breach of his sales-security agreement facially supports Worrel's contention. However, the California Appellate Court was not required to fix precisely the date or event constituting the breach which accelerated debtor's unpaid installment balance because the four-year limitation had clearly run as to claimant's suit for a deficiency judgment.[18] Further, the trial court had held that the four-year limitation period ran from the date that the creditor-plaintiff repossessed the equipment; and its judgment was affirmed on appeal without disagreement as to its reasoning or grounds.

### C.

The result we reach as to the accrual of the time limitation under § 2–725 on suit

15. The Court also relied by analogy on California cases involving the timeliness of actions to recover a deficiency following resale of real property secured by a deed of trust. Since such actions were also "founded" upon the underlying debt instrument, the time limitation on such deficiency actions was held to run from the date of maturity or breach of the underlying instrument, not from the date of resale of the property. *Rust v. Hill,* Cal.Supr., 17 Cal.2d 517, 110 P.2d 657 (1941).

16. Apart from *Massey-Ferguson,* the only remaining authority cited by the Court below to support its holding was an unreported Delaware Superior Court letter-opinion in *Associates Capitol Services Corporation v. Sturgis,* Del.Super., C.A.No.421, 1976 (February 18, 1977), which we decline to follow. The decision was rendered without reasons or support-

ing authorities and was not related to the Delaware Uniform Commercial Code.

17. The Court stated:

"We conclude therefore, by analogy to the real property cases, that a conditional seller's action to recover a deficiency from a defaulting buyer is barred by Commercial Code section 2725 if more than four years have elapsed since the breach of the conditional sale agreement." 133 Cal.Rptr. at 500.

18. Debtors defaulted on their annual installment payment in September 1970; in December 1970 creditor repossessed the secured property after debtors "failed to honor a demand for payment"; the property was resold in May 1972; and creditor's suit for a deficiency judgment was not filed until September 1975.

for a deficiency balance is consistent with pre-Code law as to limitations on suits for breach of installment payment contracts: i. e., that "the statute of limitations began to run with respect to each installment only from the time it became due, unless the seller had the option of declaring the whole sum due and exercised that option, in which case the statute began to run from the date of the exercise of the option." 67 *Am.Jur. 2d., Sales*, § 538 at page 724. We do not read § 2–725 as altering these general legal principles. The application of the statutory language necessarily requires relating the nature of the suit, or "cause of action", to the terms of the Agreement as to "when the breach occurs." A suit for a deficiency judgment is, as stated in *Palmer*, nothing more than a claim for the unpaid balance of buyer's contractual obligation to pay the full sales price (see footnote, page 471 above). Such cause of action accrued when the Bank opted to exercise its remedy on default to declare Worrel's remaining obligations under the Agreement to be immediately due and payable.

This result is also consistent with the purpose underlying a limitations period. Statutes of limitations are "statutes of repose." *Bovay v. H. M. Byllesby & Co.*, Del.Ch., 29 A.2d 801 (1943); *Keller v. President, Directors & Co. of Farmers Bank of the State of Delaware*, Del.Super., 24 A.2d 539 (1942); 51 *Am.Jur.2d, Limitation of Actions*, § 16. Staying the running of § 2–725 until a creditor's resale following repossession of the secured chattel would: (a) be inconsistent with such underlying purpose; and (b) unfairly relate the running of the time limitation to a creditor's collection practices.

The judgment of the Superior Court is affirmed.