**William M. McINTOSH, Plaintiff,**

v.

**ARABIAN AMERICAN OIL CO., Defendant.**

**Civ. A. No. 84–748–JRR.**

United States District Court, D. Delaware.

March 21, 1986.

---

Stephen D.M. Robinson, and Donald W. Booker, Wilmington, Del., for plaintiff.

Charles S. Crompton, Jr., and John E. James, of Potter, Anderson & Corroon, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

ROTH, District Judge.

Defendant Arabian American Oil Co. ("Aramco") has moved for summary judgment in this action pursuant to Fed.R. Civ.P. 56(b). This is a breach of employment contract action which was filed by plaintiff William M. McIntosh against Aramco in December of 1984. McIntosh seeks reimbursement for tuition and transportation expenses he incurred in sending his children to foreign secondary schools in the late 1970s. McIntosh, who was located in Saudi Arabia by his employer, alleges that the terms of his employment contract with Aramco entitle him to these benefits, even though after 1971 he failed to meet the stated eligibility requirements for the funds. Aramco contends in its motion for summary judgment that plaintiff has not stated a claim upon which relief can be granted, that plaintiff's breach of contract claims are barred by the applicable statute of limitations and that punitive damages and emotional distress claims are not permitted in contract actions. The Court will consider only the statute of limitations argument in dismissing plaintiff's cause of action.

The Court has diversity jurisdiction of this matter under 28 U.S.C. § 1332 because the amount in controversy exceeds $10,000 and the plaintiff and defendant are completely diverse. Defendant Aramco is incorporated in Delaware and plaintiff McIntosh is a domiciliary of Florida.

### I. *Statement of Facts*

The facts relevant to McIntosh's cause of action span two decades. The Court must set forth the events in McIntosh's life in some detail in order to determine the date on which the statute of limitations began to run.

### A. *Dissolution of the McIntosh Marriage*

Plaintiff was employed by Aramco in early 1965 as an English instructor for Aramco's Saudi Arabian employees. The contract for employment was negotiated and executed by McIntosh in New York. McIntosh also signed a Qualification Record that provided New York law would govern any claims of work-related injuries.

McIntosh's wife and two children resided with him in Saudi Arabia from 1965 to 1971. In early 1971, McIntosh discovered his wife was involved in adulterous rela-

tionship with N.T. Rash, another Aramco employee. In early July 1971, McIntosh's wife failed to join plaintiff and their children in the United States for a vacation. It was later learned by plaintiff that on June 29, 1971, Mrs. McIntosh obtained from a Mexican court a divorce decree and an order granting her custody of the two children. The decree forbade Mrs. McIntosh to remarry within 300 days.

During late July, 1971, Mrs. McIntosh arrived in the United States accompanied by N.T. Rash. In August, plaintiff arranged a vacation in France with his wife and they attempted a reconciliation. Plaintiff and Mrs. McIntosh agreed that she and the children would rejoin him in Saudi Arabia when he was able to gain family housing at his new teaching assignment.

Mrs. McIntosh subsequently violated the terms of the divorce decree by marrying Rash on September 22, 1971. Mrs. McIntosh then returned to Saudi Arabia with her children but they moved in with Rash to whom Aramco had assigned family housing. Mrs. McIntosh and the children were traveling in Saudi Arabia with passports issued to them as the wife and children of plaintiff.

Around June 14, 1972, Aramco became aware that Mrs. McIntosh's Mexican divorce was invalid. Aramco gave Mrs. McIntosh and her children two weeks to leave Saudi Arabia. Mr. McIntosh did not attempt to gain custody of his children at that time. He states that he was aware that Aramco did not allow single parent households in Saudi Arabia.

The McIntoshes finally obtained a valid divorce decree from a French court on April 13, 1976. At no time did McIntosh attempt to gain custody of his children, who had been living with their mother and Rash since 1971.

B. *The Aramco Educational Assistance Plan*

Because secondary school facilities in Saudi Arabia were limited in the early 1970's, Aramco had a policy of providing financial assistance to employees who wished to send their children to secondary schools in other countries. As described in the Aramco Industrial Relations Manual, the Educational Assistance Plan ("EAP") covered 80 percent of a student's tuition for grades 10 through 12 at a boarding school. The EAP also paid the transportation costs of children who were enrolled in foreign secondary schools or colleges and visited their employee-parents in Saudi Arabia during school vacations.

The EAP explicitly requires an employee to be on "family status" before he may claim benefits under the plan. "Family status" is defined as "the physical presence of the employee's family, particularly the spouse, in the SAO [Aramco's Saudi Arabian Organization] and *so maintained throughout the duration of the assistance*" (Emphasis added). In accordance with the clear terms of the employment manual, Aramco discontinued McIntosh's EAP benefits at the time his wife and children were no longer physically residents of his Saudi Arabia household. A liberal determination of the date Mrs. McIntosh was no longer physically present in the SAO as plaintiff's spouse would be September 22, 1971, when Mrs. McIntosh married N.T. Rash. Subsequently, Aramco assigned Rash family status and afforded family housing for his new wife and her two children. On December 1, 1971, Aramco notified McIntosh that he had been removed from family status and placed on bachelor status. McIntosh charges in his complaint that Aramco's reclassification violated the terms of his employment agreement.

C. *An Earlier McIntosh v. Arabian America Oil Co. Suit Was Dismissed.*

McIntosh previously filed this same claim against Aramco in September, 1981, in the U.S. District Court for the District of Delaware. Former District Court Judge Stapleton dismissed the action on May 25, 1983, for lack of subject matter jurisdiction. In order for the Court to have had diversity jurisdiction over the matter, McIn-

tosh had to have been a citizen of the United States and of a particular state. Because McIntosh was not at that time domiciled in a particular state, the Court granted Aramco's Motion to Dismiss. Plaintiff subsequently became a resident of Florida.

## II. *Standard of Review.*

Plaintiff has filed this action pursuant to 28 U.S.C. § 1332 which grants the federal courts diversity jurisdiction. A federal court sitting in diversity shall apply the substantive law of the state in which it sits. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A state's substantive law encompasses its conflicts of law rules. Thus, when a cause of action arises outside of the forum state, a federal court sitting in diversity must apply the forum's conflicts of law rules to ascertain which state's law is to be applied in the case at bar. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Defendant Aramco contends in its motion for summary judgment that plaintiff's claims are barred by all statutes of limitations that the Court may find applicable. Like many other jurisdictions, Delaware has adopted a borrowing statute, 10 *Del.C.* § 8121, designed to prevent nonresident plaintiffs from shopping for a forum with a statute of limitations that is longer than that of the state in which the cause of action arose. The borrowing statute provides that a federal court sitting in diversity in Delaware shall apply the shorter of the statutes of limitations of Delaware or the jurisdiction where the cause of action arose. 10 *Del.C.* § 8121.

## III. *Plaintiff's Claims Are Time-Barred.*

The Court has surveyed the various relevant time limitations and for the reasons set forth below finds that they all bar plaintiff's claim for recovery of EAP benefits. Plaintiff has failed to confront defendant's statute of limitations argument with either legal or factual contradictions. In the absence of more factually pointed pleadings, the Court, in order to conclusively dismiss plaintiff's suit, must apply the several potential statutes of limitations to a range of possible accrual dates.

### A. *Situs of the Cause of Action.*

Initially, the Court must determine where the plaintiff's cause of action arose. The Delaware choice of law rules for a contract action dictate that the cause of action arises at the place of "the most significant relationship to the transaction." *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* Del.Supr., 394 A.2d 1160, 1166 (1978). The Court has considered the factors set forth in the Restatement (Second) Conflict of Laws: (1) place of contracting; (2) place of contract negotiation; (3) place of performance; (4) location of subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Although these factors as applied to the facts are inconclusive as to a choice between a New York or a Saudi Arabian forum, the Court finds the balance favors applying New York law. The plaintiff has explicitly pleaded in his complaint a breach of employment contract action to which he argues New York law is applicable. In addition, the contract was negotiated and executed in New York and there was an agreement between the parties that New York law would govern plaintiff's work-related injuries. Although plaintiff recently has attempted to recast this suit as a negligence or intentional tort action, the Court maintains that the facts, as pleaded by the plaintiff, clearly indicate a contract action.

### B. *New York and Delaware Statutes Of Limitation Compared.*

Pursuant to Delaware's borrowing statute, the Court must compare the governing statutes of limitations. 10 *Del.C.* § 8121. Because the Delaware statute of limitations scheme is based on the type of injury suffered rather than the type of action instituted, the Court must first look beyond the plaintiff's pleadings to determine the

particular statute of limitations which would apply to such an action in Delaware. *Heritage v. Bd. of Ed., DeLaWarr School District,* 447 F.Supp. 1240, 1241, n. 2 (D.Del.1978). The Court is able to construe plaintiff's claim as either a breach of contract action or as an attempt to recover employment benefits. The distinction might be crucial because Delaware has a three year statute of limitations for a breach of contract action and a one year time limitation for actions to recover employment benefits. *See* 10 *Del.C.* §§ 8106, 8111. The Court will illustrate *infra* that the distinction is not crucial here for the same reason that the time period of the New York statute is unimportant.

The Court does not cite a New York statute to compare with Delaware's § 8106 or § 8111. This is due to the fact that the Court finds that Delaware's three year time limitation, whether the longer or shorter of the New York and Delaware time periods to be compared pursuant to Delaware's borrowing statute, will effectively bar any claim by the plaintiff for either breach of contract or for benefits due.[1]

### C. *Accrual Dates of the Cause of Action.*

Since the Court has narrowed the term of the statutes of limitations to either three years for a breach of contract action or one year for an action to recover employment benefits, the Court must now extract from the pleaded facts the appropriate accrual dates for each of these types of causes of action.

#### 1. *Breach of Contract.*

Plaintiff argues that Aramco breached its employment contract by denying plaintiff family housing status and reimbursement for his childrens' secondary school expenses. "Under general principles of contract law, the time limitation of a contract claim limitation statute begins to run from the date of breach of contract." *Worrel v. Farmers Bank of Delaware,* Del.Supr., 430 A.2d 469 (1981).

■ The Court finds that the contract cause of action accrued on December 1, 1971, when defendant Aramco notified McIntosh that it was terminating his eligibility for family status benefits. Plaintiff claims he unjustly has been denied family status benefits, therefore, the alleged breach of contract accrued at the time plaintiff was identified and classified by Aramco as ineligible for family status. Plaintiff did not bring a breach of contract action within three years of December 1, 1971, thus, this breach of contract action by plaintiff is barred.

Plaintiff could have requalified for family status benefits anytime after December 1, 1971, if he had satisfied the terms of the contract by reconciling with his wife or remarrying and gaining custody of his children. Plaintiff, however, has remained either separated or single since September 22, 1971, and thereby has not regained eligibility under the EAP terms of the contract. Furthermore, plaintiff has not even alleged that he requalified for EAP benefits after 1971, therefore, the Court finds the only accrual date for a breach of contract action is December 1, 1971.

#### 2. *Recovery of Employment Benefits.*

Defendant Aramco argues that McIntosh's claims are governed by 10 *Del.C.* § 8111, Delaware's statute of limitations limited to actions for the recovery of employment benefits. McIntosh has phrased his claim as a breach of contract action but his purpose is to recover the employment benefits afforded to eligible employees.

Section § 8111 requires that legal action for the recovery of employment benefits shall be initiated within one year of the accrual date of the cause of action on which the action is based. This Court has acknowledged that the legislative intent of

---

1. The same reasoning would apply to bar any claim if the Saudi Arabian statute of limitations

had been found to be applicable.

§ 8111 was "to bar all claims arising out of the employer-employee relationship." *Sorensen v. The Overland Corporation*, 142 F.Supp. 354, 360 (D.Del.1956), *aff'd*, 242 F.2d 70 (3rd Cir.1957). "The word 'benefits' is embracing and covers all advantages growing out of employment." *Id.* Educational assistance for plaintiff's children is an advantage arising solely from McIntosh's position and activities as an Aramco employee.

Accrual dates for plaintiff's action to recover employment benefits range from December 1, 1971, when plaintiff was designated ineligible for the benefits, to December 31, 1979, when plaintiff exhausted Aramco's internal grievance procedure. The Court will rely on the practice of the *Sorensen* court which held under 10 *Del.C.* § 8111 that the cause of action accrued at the time the employee became liable for an expense that allegedly was a bargained for benefit within the employer-employee relationship.

In *Sorensen*, plaintiff, a corporate director, had contracted with the corporation for indemnity from legal expenses incurred by him in his directorial capacity. *Id.* at 357. The Court found the indemnity provision to be compensation for services performed and, thus, applied the one year statute of limitations mandated by 10 *Del.C.* § 8111. The Court held that the cause of action for indemnification accrued on the date when the services were rendered which created plaintiff's liability, not later when the bills were tendered, when plaintiff paid the bills or when defendant corporation rejected plaintiff's claim. *Id.* at 361.

■ In applying the reasoning of *Sorensen* to the events giving rise to McIntosh's action to recover employment benefits, this Court finds the accrual date is the date on which McIntosh became personally liable for his childrens' educational expenses. On December 1, 1971, McIntosh was officially notified by the company that he had been removed from family status. McIntosh, therefore, had knowledge as of December, 1971, that as either a separated or divorced man without custody of his children, he would no longer be eligible for the educational assistance program sponsored by his employer but would have to pay himself for any such schooling.

McIntosh appears to be claiming that he has a residual right to the educational benefits even after he was declared to be ineligible by his employer. The Court cannot comprehend the basis of plaintiff's claim as stated. McIntosh, within a one or three year time period after December, 1971, could have brought a timely action claiming he was unjustly terminated from family status, but, unfortunately for McIntosh, an action initiated in 1984 to redress an employer's conduct in 1971 is precisely the type of suit 10 *Del.C.* § 8111 was intended to preclude.

Although the Court views December 1, 1971, as the date on which plaintiff's cause of action accrued, we acknowledge that December 31, 1979, is another arguable accrual date. During the 1978–1979 school year, plaintiff was asked by his wife to assume the expenses for his oldest child's high school education. At that time, McIntosh began applying to Aramco for the educational benefits. Aramco consistently denied any assistance to McIntosh. On December 31, 1979, McIntosh was informed with finality by an Aramco vice president that he was not eligible for educational benefits and would be awarded none. McIntosh did not bring an action within one year of that date. Therefore, a cause of action citing even that latest conceivable accrual date is barred.

## IV. Conclusion.

The Court finds there are no possible accrual dates for a contract action by plaintiff that would not be barred by either a one-year or a three-year statute of limitations. The Court grants defendant's motion for summary judgment on the basis that plaintiff's action has been time-barred for over ten years. An Order will be entered consistent with this Opinion.