**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: October 6, 2014
Date Decided: October 13, 2014

Kashif I. Chowdhry, Esquire
Parkowski, Guerke & Swayze, P.A.
116 West Water Street
Dover, DE 19903

Michael Rushe, Esquire
Hudson, Jones, Jaywork & Fisher, LLC
225 South State Street
Dover, DE 19901

> Re:     *Knutkowski v. Cross*
>          Civil Action No. 4889-VCG

Dear Counsel:

This matter was before me on cross-motions for partial summary judgment. On October 6, 2014, I heard oral argument and disposed of the majority of the issues presented from the Bench. Remaining is the Defendant's Motion for Partial Summary Judgment regarding the effect of a promissory note, made on September 12, 1997 and effective October 1, 1997, obligating the Defendant to repay $85,000 in monthly installments to George D. Knutkowski (the "Note"). The Note is a simple and unsophisticated contract requiring repayment of a loan that was made by Knutkowski to his then-girlfriend, later wife and now widow, the Defendant, Nonnie Cross. It was presumably drafted by the parties themselves. Mr. Knutkowski is now deceased. The Note indicates that upon Mr. Knutkowski's

death, his rights under the Note did not pass to his estate; instead, his right to recovery passed to his son, George D. Knutkowski, II, one of the Plaintiffs here.

The Note called for repayment to be made in monthly installments of $900 over a ten-year period, with the first payment due January 1, 1998. I assume for purposes of this Motion for Partial Summary Judgment only that no payments were ever made on the Note, such that all payments are at issue. The Note did not provide for acceleration of the entire amount due should the debtor default on one or more payment obligations.

This action was brought by the individual Plaintiff on September 11, 2009. The parties agree that a six-year statute of limitations applies under 6 *Del. C.* § 3-118(a).[1] The single issue presented is this: Where a note calls for repayment of a loan in installments on discrete dates, but fails to provide for a right to accelerate when payments are in default, and where suit is filed to recover the amount due under the note at a time when the limitations period has run with respect to some of the installment payment obligations but not others, what portion, if any, of recovery under the note is permitted, or excluded, by operation of the statute of limitations?

---

[1] That provision provides that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." 6 *Del. C.* § 3-118(a).

For the following reasons, I find that only those payments due to have been made within the statutory period may be recovered. In the present case, this means that only those payments due after September 11, 2003, the date six years preceding the filing of this action, may be recovered upon a finding of liability.

A. *Analysis*

The Defendant's motion raises the statute of limitations and laches as grounds for summary judgment on the Note. While the "limitations of actions applicable in a court of law are not controlling in equity,"[2] this Court "will apply the terms of the statute in bar of a purely legal right which happens to be drawn into its cognizance where, had the action been at law, it would have been barred there."[3] Even in equitable actions, this Court "accords great weight to the analogous statute of limitations. In the absence of unusual or extraordinary circumstances, the analogous statute of limitations creates a presumptive time period during which the claim must be filed or else be barred as stale or untimely."[4]

---

[2] *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009).

[3] *Haas v. Sinaloa Exploration & Dev. Co.*, 152 A. 216, 217–18 (Del. Ch. 1930); *see also Bokat v. Getty Oil Co.*, 262 A.2d 246, 251 (Del. 1970) ("When the relief sought in Chancery is legal in nature, it is clear that Chancery will apply the statute of limitations rather than the equitable doctrine of laches.") *disapproved of on other grounds by Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004).

[4] *Envo, Inc. v. Walters*, 2009 WL 5173807 (Del. Ch. Dec. 30, 2009) *aff'd*, 2013 WL 1283533 (Del. Mar. 28, 2013) (footnotes omitted); *see also Whittington v. Dragon Grp., L.L.C.*, 991 A.2d 1, 9 (Del. 2009) ("Where the plaintiff seeks equitable relief, however, the Court of Chancery applies the statute of limitations by analogy.").

The Defendant argues that the Plaintiff's suit was dilatory, that she will suffer prejudice as a result, and that as a matter of equity the Plaintiff's action on the Note should be barred by laches. As noted at oral argument, I am reserving any decision on the applicability of laches on the Plaintiff's various claims, some of them equitable in nature, until after trial. However, in considering the legal question of whether the statute of limitations bars recovery on the Note, I find that approximately half of the payments sought under the Note are barred by operation of Section 3-118(a).

My analysis begins with the statute itself, which provides that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date *or dates* stated in the note or, if a due date is accelerated, within six years after the accelerated due date."[5] Applied here, the statute bars action on payment obligations due before September 11, 2003. In arguing that he can recover the entire face value on the Note, the Plaintiff points to case law distinguishing continuous and severable obligations, suggesting that, because Delaware treats severability as a matter of the parties' intent, this is at least a factual issue requiring trial.[6] The cases on which the Plaintiff relies, however, involve contracts of a nature distinguishable from the installment

---

[5] 6 *Del. C.* § 3-118(a) (emphasis added).
[6] *See* Pl's Answering Br. in Opp. to Def.'s Mot. for Partial Summ. J. at 10.

payment provisions of the promissory note at issue in the present case.[7] Those

cases involved agreements on which the accrual date of a breach could not be

readily determined[8] or where damages were not ascertainable as of some

intermediate date.[9]

---

[7] *See SPX Corp. v. Garda USA, Inc.*, 2012 WL 6841398 at \*2–3 (Del. Super. Dec. 6, 2012) (involving an obligation to reimburse the plaintiff for its expenses in administering employee benefit and compensation plans on an ongoing basis, as well as an obligation to replace the plaintiff's letters of credit); *Bridgestone/Firestone, Inc. v. Cap Gemini Am., Inc.*, 2002 WL 1042089 (Del. Super. May 23, 2002) (involving four contracts governing a consulting relationship relating to selection of enterprise resource planning software between Bridgestone/Firestone and Gemini); *Chaplake Holdings, Ltd. v. Chrysler Corp.*, 1999 WL 167834 at \*21 (Del. Super. Jan. 13, 1999) (involving an implied contract between Chrysler and Lamborghini that the latter would "introduce two new models, expand its production capabilities and that [another entity] would correspondingly expand to handle a significant increase in sales of cars by obtaining a centralized distribution center, expand its sales facilities to handle the increasing number of cars and that all of this would be over five-to-six years"); *Matter of Burger*, 125 B.R. 894, 898 (Bankr. D. Del. 1991) (involving a contract for, in part, the purchase of a herd of cattle for $150,000, under which the seller was to "manage, maintain, and expand the herd as well as to improve its quality" while the buyer "paid all feed and upkeep expenses [and the seller] would pay over all milk revenues and any sale proceeds from bulls or cull cows"); *Scott Fetzer Co. v. Douglas Components Corp.*, 1994 WL 148282 (Del. Ch. Apr. 12, 1994) (involving, as relevant to this analysis, a contract for the assumption of CERCLA liability for six sites); *Guerrieri v. Cajun Cove Condo. Council*, 2007 WL 1520039 at \*4–6 (Del. Super. Apr. 25, 2007) (involving "an ongoing, continuous duty to maintain, repair and replace [a] damaged pipe" under a condominium creation document).

[8] *See, e.g.*, SPX *Corp.*, 2012 WL 6841398, at \*3 ("There is at least an arguable position that [an] obligation [to reimburse employee benefit payments] had not matured until [the] individual [ongoing] compensation payments had been completed [by the party seeking reimbursement]," thus necessitating factual development on the issue); *Bridgestone/Firestone*, 2002 WL 1042089 at \*7 (finding a question of fact as to whether a series of four agreements constituted a continuing obligation). Although the Plaintiff also cites *Scott Fetzer Co.*, 1994 WL 148282, this Court did not reach the issue of whether the contract created a continuing obligation in reaching its decision in that case. *See id.* at \*5.

[9] *See, e.g., Matter of Burger*, 125 B.R. at 902; *Chaplake Holdings*, 1999 WL 167834, at \*22 ("[O]nly near the end [of the parties' relationship] was it possible to better ascertain the damages.").

The case at hand does not present the same kind of factual issue.[10]  Because the dates on which the Defendant's obligations were due were defined precisely in the Note, as were the amounts to be repaid, under the clear language of Section 3-118(a), the limitations period began to run upon each discrete breach, on the date due.  The same rationale precludes the Defendant's argument that the failure to file an action for the first breach of an installment obligation under the Note within six years bars *any* recovery under the Note.

I find our Supreme Court's holding in *Worrel v. Farmers Bank of State of Delaware*[11] helpful here.  In that case, an installment sales contract provided that the Bank may elect to accelerate unpaid remaining obligations, though acceleration was not automatic upon a missed payment. The Court held that the statute of limitations (in that case, a four-year period under 6 *Del. C.* § 2-725) did not begin to run against the entirety of the amount to be repaid until the obligor had missed an installment payment and the Bank declared the remainder immediately due and payable under the acceleration clause.[12]  Importantly with respect to the issue before me, the Court noted that its conclusion was consistent with pre-Uniform

---

[10]*See Guerrieri*, 2007 WL 1520039 at *6 ("Although in some cases, whether a contract is continuous may be a question of fact, there are situations, such as here, where no factual issue exists.").

[11] 430 A.2d 469 (Del. 1981).

[12] *Id.* at 474.

Commercial Code law on statutes of limitations in installment payment contracts, which the Court explained provided that

> the statute of limitations began to run with respect to *each* installment only *from the time it became due*, unless the seller had the option of declaring the whole sum due and exercised that option, in which case the statute began to run from the date of the exercise of that option.[13]

This is consistent with the clear language of Section 3-118(a), which now governs actions to enforce obligations to pay on a note.[14]

Accordingly, I find that the statute of limitations will act as a bar to any missed installment payments that occurred more than six years preceding the date this action was instituted, but not those due thereafter. Stated differently, only those installment payments due after September 11, 2003, the date six years prior to the filing of this lawsuit, can be recovered if I ultimately find, post-trial, that the Defendant has not carried her burden of proof as to payment.

B. *Conclusion*

---

[13] *Id.* at 475–76 (emphasis added); *see also* Walpole v. Walls, 2003 WL 22931330 at *2 (Del. CCP July 8, 2003).

[14] *See also Desimone v. Barrows*, 924 A.2d 908, 924 n.39 (Del. Ch. 2007) ("Rather, the well-accepted rule in the statute of limitations context is that the statute of limitations for each discrete wrongful transaction begins to run upon the occurrence of each transaction, and a plaintiff can only challenge those transactions, or other wrongful acts, that occurred within the limitations period."); *Price v. Wilmington Trust Co.*, 1995 WL 317017 at *2 (Del. Ch. May 19, 1995) (involving "numerous repeated wrongs of similar, if not same, character over an extended period" and finding that each incident "[gave] rise to separate cause of action"); *Bean v. Fursa Capital Partners, LP*, 2013 WL 755792 at *5 (Del. Ch. Feb. 28, 2013) (finding that "repeated failures to prepare and deliver audited annual financial statements for 2008 through 2011 are each separate wrongful transactions").

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is granted in part, insofar as the statute of limitations bars recovery on installments due prior to September 11, 2003. Regarding any payments due after September 11, 2003, the Defendant's Motion, to the extent it rests on the statute of limitations, is denied. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III