2003 VT 47

### DaimlerChrysler Services North America, LLC v. Duane Ouimette and Stephanie Faulkner a/k/a Ouimette

[830 A.2d 38]

No. 02-423

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed May 16, 2003

*Alan A. Bjerke* of *Bauer, Anderson & Gravel,* Burlington, for Plaintiff-Appellant.

¶ 1. **Dooley, J.** Plaintiff DaimlerChrysler Services North America, LLC (DaimlerChrysler) appeals a superior court decision denying its request for a default judgment in an action to collect a deficiency remaining on a motor vehicle retail installment sales contract. DaimlerChrysler argues that the superior court erred by (1) applying the statute of limitations sua sponte, and (2) using the four-year statute of limitations for sales contracts in 9A V.S.A. § 2-725 instead of the general six-year statute of limitations for civil actions in 12 V.S.A. § 511. We affirm.

¶ 2. In 1992, defendants Duane Ouimette and Stephanie Faulkner purchased a Pontiac Grand Prix from Burt Paquin Ford, Inc., along with an extended warranty service contract, credit life insurance policy, and credit accident and health policy. Defendants and the car

dealership entered into a Vermont simple interest retail installment sales contract (the contract) pursuant to the Motor Vehicle Retail Installment Sales Finance Act, 9 V.S.A. §§ 2351-2362. The contract provided for deferred payments on the balance remaining after defendants' down payment and trade-in, and granted a security interest in the car to the dealership in order to ensure full payment of the purchase price. Under the terms of the contract, the dealership simultaneously sold and assigned the rights under the contract to Chrysler Credit Corporation, which later became DaimlerChrysler.

¶ 3. When defendants failed to make all payments, DaimlerChrysler repossessed the car and sold it at auction as provided under the terms of the contract. In addition, DaimlerChrysler terminated the extended warranty and insurance agreements and obtained a refund of the unearned premiums. All funds collected by DaimlerChrysler were credited to defendants' account, leaving a balance due of $10,044.76. In May 2002, approximately five and one-half years after default and repossession, DaimlerChrysler sued to collect the deficiency, plus costs of service, interest, and attorney's fees, for a total of $17,551.06. After defendants failed to appear, DaimlerChrysler moved for a default judgment. The superior court denied the claim as barred by the four-year statute of limitations for sales contracts under Article 2 of the Uniform Commercial Code (UCC). See 9A V.S.A. § 2-725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."). The court later denied DaimlerChrysler's motion for reconsideration. This appeal followed.

¶ 4. DaimlerChrysler first challenges the court's authority to apply the statute of limitations sua sponte on behalf of a party in default. DaimlerChrysler contends that because V.R.C.P. 8(c) requires the statute of limitations defense to be affirmatively pled in the defendant's answer or the defense is waived, *Lillicrap v. Martin*, 156 Vt. 165, 170, 591 A.2d 41, 43 (1989), and because the defendant bears the burden to establish the defense, *Monti v. Granite Sav. Bank & Trust Co.*, 133 Vt. 204, 209, 333 A.2d 106, 109 (1975), it was error for the court to raise the issue sua sponte and dismiss the complaint. DaimlerChrysler relies upon a series of cases from other jurisdictions which hold that the waiver provisions in Rule 8(c) prevent a court from raising an affirmative defense sua sponte for a party in default. See, e.g., *Estabrook v. Baden*, 943 P.2d 1334, 1336-37 (Mont. 1997); *Adams v. Inman*, 892 S.W.2d 651, 653 (Mo. Ct. App. 1994); *Smith v. Rheaume*, 623 So. 2d 625, 626 (Fla. Dist. Ct. App. 1993).

■ ¶ 5. We decline to make such a hard and fast rule. This Court has generally taken a flexible approach to Rule 8(c) in light of our determination that the rule is primarily "a notice provision, intended to prevent unfair surprise at trial." *Merrilees v. State*, 159 Vt. 623, 623, 618 A.2d 1314, 1315 (1992) (mem.). For instance, in *Lillicrap* we held that Rule 8(c) does not automatically waive any affirmative defense not promptly pled, but rather that in considering a request to amend the pleadings to add an affirmative defense under V.R.C.P. 15, the trial court must balance the right of a party to adequate notice of the defense asserted against the right of the other party to be heard on the merits. *Lillicrap*, 156 Vt. at 170-71, 591 A.2d at 44. Similarly, we have recognized that Rule 8(c) is subject to exceptions allowing the court to act sua sponte if necessary to do substantial justice and if there is no prejudice to the parties. See *Merrilees*, 159 Vt. at 623, 618 A.2d at 1315 (this Court may raise the affirmative defense of res judicata sua sponte and for the first time on appeal, so long as the parties are given an opportunity to fully brief the issue); *City of Burlington v. Mountain Cable Co.*, 151 Vt. 161, 163, 559 A.2d 153, 154 (1988) (this Court will recognize unraised affirmative defense of illegality and deny relief if the illegality is "of a serious nature"). We think such an exception is also appropriate in the context of a default judgment where, as here, there have been no pleadings submitted by the party in default, there will be no trial, and there is no prejudice to the plaintiff since the statute of limitations defect is apparent on the face of plaintiff's complaint. Cf. *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) (a district judge may dismiss sua sponte an in forma pauperis complaint under 28 U.S.C. § 1915(d) when it is apparent from the face of the complaint that the statute of limitations has run).

■ ¶ 6. Rule 8(c) must also be balanced in this case against V.R.C.P. 55(b), which commits judgment by default to the trial court's discretion. Rule 55(b)(3) authorizes the court to hold hearings prior to issuing a default judgment if necessary "to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter." V.R.C.P. 55(b)(3). Thus, if the court can investigate the merits prior to issuing judgment against a party in default, it also has the authority to consider expiration of the statute of limitations if apparent on the face of plaintiff's complaint. Indeed, to hold otherwise would obligate the court to issue judgment against a party that has not made an appearance no matter how old or unjust the claim. See *Desjarlais v. Gilman*, 143 Vt. 154, 158-59, 463 A.2d 234, 237 (1983) ("Generally, the

rules relating to default judgments should be liberally construed in favor of defendants, and of the desirability of resolving litigation on the merits, to the end that fairness and justice are served."). Under these circumstances, we see no abuse of discretion in the trial court's sua sponte conclusion that the statute of limitations bars DaimlerChrysler's request for a default judgment. Cf. *Exeter Hosp. v. Hall*, 629 A.2d 88, 89-90 (N.H. 1993) (trial court did not abuse its discretion in raising sua sponte the statute of limitations defense for a pro se defendant).

¶ 7. DaimlerChrysler's second argument is that the court applied the wrong statute of limitations. The court held that actions for a deficiency on a motor vehicle retail installment sales contract are governed by the four-year statute of limitations, 9A V.S.A. § 2-725, included in Article 2 of the UCC (Sales). DaimlerChrysler contends that deficiency actions should instead be governed by Article 9 of the UCC (Secured Transactions), which contains no specific time bar other than the general six-year statute of limitations set forth in 12 V.S.A. § 511.

¶ 8. The question of which article applies to a suit for default on a motor vehicle retail installment sales contract has not previously been addressed in Vermont. Nearly every jurisdiction that has addressed the issue, however, has concluded that the four-year limitation period in Article 2 applies. See, e.g., *Jack Heskett Lincoln-Mercury, Inc. v. Metcalf*, 204 Cal. Rptr. 355, 357 (Ct. App. 1984); *Worrel v. Farmers Bank of Del.*, 430 A.2d 469, 471-72 (Del. 1981); *First Hawaiian Bank v. Powers*, 998 P.2d 55, 67 n.8 (Haw. Ct. App. 2000); *Citizen's Nat'l Bank of Decatur v. Farmer*, 395 N.E.2d 1121, 1122-24 (Ill. App. Ct. 1979); *Scott v. Ford Motor Credit Co.*, 691 A.2d 1320, 1322-26 (Md. 1997); *First of Am. Bank v. Thompson*, 552 N.W.2d 516, 520-22 (Mich. Ct. App. 1996); *Assocs. Disc. Corp. v. Palmer*, 219 A.2d 858, 860-61 (N.J. 1966); *Ford Motor Credit Co. v. Arce*, 791 A.2d 1041, 1042-44 (N.J. Super. Ct. App. Div. 2002) (considering intervening law); *First Nat'l Bank in Albuquerque v. Chase*, 887 P.2d 1250, 1253 (N.M. 1994). But see *N.C. Nat'l Bank v. Holshouser*, 247 S.E.2d 645, 648 (N.C. 1978) (Article 9, not Article 2, governs deficiency actions); *Chaney v. Fields Chevrolet Co.*, 503 P.2d 1239, 1241 (Or. 1972) (although a deficiency action is more closely related to a sale than to a security, an action by the party in default to recover a surplus is more closely related to a security and thus is governed by Article 9); see generally, Annotation, *Causes of Action Governed by Limitations Period in UCC § 2-725*, 49 A.L.R.5th 1, 144-49 (1997).

■ ¶ 9. We find the seminal case of *Associates Discount Corp. v. Palmer* to be particularly instructive. In examining the nature of a suit for deficiency on a retail installment sales contract, the Supreme Court of New Jersey held:

> Such a suit is nothing but a simple *in personam* action for that part of the sales price which remains unpaid after the seller has exhausted his rights under Article 9 by selling the collateral; it is an action to enforce the obligation of the buyer to pay the full sale price to the seller, an obligation which is an essential element of all sales and which exists whether or not the sale is accompanied by a security arrangement. Thus … a deficiency action must be considered more closely related to the sales aspect of a combination sales-security agreement rather than to its security aspect and be controlled by the four-year limitation in … § 2-725.

219 A.2d at 861 (footnote and internal citations omitted). The *Palmer* court further noted that although Article 2 expressly does not apply to any transaction " 'intended to operate only as a security transaction,' " *id.* at 861 n.3 (quoting UCC § 2-102), a retail installment sales contract, as a hybrid sales-security agreement, was not intended to operate "only" as a security transaction, and therefore Article 2 applied. *Id.* The UCC language considered in *Palmer* has been adopted in Vermont. See 9A V.S.A. § 2-102 (scope of Article 2 of UCC), § 2-725(1) (statute of limitations for sales contracts). We find *Palmer* persuasive and follow its reasoning. Accordingly, we hold that 9A V.S.A. § 2-725 sets out the appropriate statute of limitations for deficiency actions on retail installment sales contracts.

■ ¶ 10. DaimlerChrysler next argues that because it is not the original seller, and because its installment sales contract with defendants financed not just a car, but also an extended warranty and insurance agreements, the contract at issue must be viewed as primarily a security agreement. We disagree. The installment sales contract at issue here defines defendants as the "buyer" and the car dealership as the "creditor(seller)." Further, the contract simultaneously assigned the dealership's rights directly to the predecessor of DaimlerChrysler, Chrysler Credit Corporation. In that assignment the dealership, as the "seller," warranted that the entire contract, including the warranty and insurance provisions, "arose from the sale of the property described on the face of this contract" and that the buyer "was quoted both a time price and a lesser cash price." We

conclude that there is a direct buyer-seller relationship between defendants and the dealership that arose primarily from a transaction in goods. As assignee of that contract, DaimlerChrysler stands in the shoes of the seller. The extended service and insurance agreements are incidental parts of that contract. We conclude that the statute of limitations for sale of goods, 9A V.S.A. § 2-725, applies to this contract. See also 9A V.S.A. § 2-707 cmt. (financing agency is included in the term "a person in the position of a seller"); *Farmer*, 395 N.E.2d at 1122-23 (as assignee of motor vehicle retail installment contract, bank had stepped into the shoes of the seller, and therefore the UCC's statute of limitations for sale of goods applies).

¶ 11. Finally, DaimlerChrysler argues that when the Legislature enacted the UCC, it expressly subordinated Article 2 to the pre-existing Motor Vehicle Retail Installment Sales Finance Act (MVRISFA). See 1966, No. 29, § 5(b) ("This act does not repeal 9 V.S.A. §§ 2351-2361 (Motor Vehicle Retail Instalment Sales Financing) ..., and if in any respect there is any inconsistency between this act and those sections, the provisions of those sections shall control."). DaimlerChrysler's argument appears to be that since the Legislature left the MVRISFA fully intact, the statute of limitations previously applicable to that Act should apply. The short answer is that there is no inconsistency between the statute of limitations of the UCC and the provisions of the MVRISFA.

¶ 12. The MVRISFA does not contain a statute of limitations. Rather, the Act regulates the licensing of motor vehicle financing agencies, 9 V.S.A. § 2352, and the formation of motor vehicle retail installment sales contracts. *Id.* § 2355. Remedies for deficiencies on contracts under the MVRISFA were originally governed by the former Uniform Sales Act, 9 V.S.A. §§ 1501-1577, which borrowed the general six-year statute of limitations for civil actions. See 12 V.S.A. § 511 ("A civil action ... shall be commenced within six years after the cause of action accrues and not thereafter."). The Uniform Sales Act was replaced by Article 2 of the UCC, which contained its own four-year statute of limitations for "breach of any contract for sale." 9A V.S.A. § 2-725. The express purpose of that provision was "[t]o introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred." *Id.* cmt. We find no inconsistency between the MVRISFA and 9A V.S.A. § 2-

725, and have no doubt that applying the four-year statute of limitations to motor vehicle retail installment sales contracts is consistent with the Legislature's intent. See also *Aube v. O'Brien,* 140 Vt. 1, 4, 433 A.2d 298, 299 (1981) ("[W]here there is a conflict between a general statute of limitations and a specific statute of limitations, the latter will prevail.").

*Affirmed.*