**D.A.N. JOINT VENTURE, III, Appellant,**

v.

**Theresa CLARK, Respondent.**

**No. WD 66513.**

Missouri Court of Appeals, Western District.

Dec. 26, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 2007.

Application for Transfer Denied May 1, 2007.

Thomas James Fritzlen, Jr., Kansas City, for appellant.

Dale K. Irwin, Kansas City, for respondent.

RONALD R. HOLLIGER, Judge.

### Summary

D.A.N. Joint Ventures III, L.P. ("DAN") appeals both the dismissal of its petition to collect on a retail installment contract and the trial court's denial of its motion for summary judgment in the same cause. Both of these actions by the trial court were grounded upon a determination that the statute of limitations barred DAN's cause of action. Because the trial court appropriately applied the four-year statute of limitations governing actions based on the breach of a contract for the sale of goods, DAN's claim was time barred and we need not address the denial of DAN's motion for summary judgment.[1]

### Factual and Procedural Background

In August of 1997, Theresa Clark ("Clark") purchased a used car. In connection with that purchase, Clark executed a retail installment contract and security agreement, which was then assigned to a finance company. Nine months later, Clark was declared in default on that installment contract by the finance company, which then repossessed and sold the car. By a series of subsequent assignments, the installment contract eventually came into the possession of DAN. In November of 2004, DAN filed suit to collect the balance due on that contract, along with interest and late charges.

Clark's answer to the petition asserted that the claim was barred by the four-year statute of limitations set forth in RSMo. Section 400.2–725. DAN then filed a motion for summary judgment, asserting both that the ten-year statute of limitations set forth in section 516.110 should govern the action and that Clark's answer admitted all of the facts necessary to establish her liability on the contract. Clark countered with a motion to dismiss, based upon the four-year statute of limitations. The trial court granted Clark's motion and overruled DAN's motion for summary judgment. This appeal follows.

### Standard of Review

■■■ This court reviews de novo the grant of a motion to dismiss. *Weems v. Montgomery*, 126 S.W.3d 479, 484 (Mo. App. W.D.2004). Similarly, which statute of limitations applies to a given cause of action is a question of law, reviewed de novo. *Chouteau Auto Mart, Inc. v. First*

---

1. As the respondent argues that the denial of a motion for summary judgment is not cognizable on appeal, it would be more precise to say that this court is not addressing *the appealability* of the trial court's summary judgment denial.

*Bank of Mo.,* 148 S.W.3d 17, 21 (Mo.App. W.D.2004). In reviewing the dismissal of a claim, this court applies the same standard employed by the trial court. *Cf. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993) (discussing appellate review of a granted motion for summary judgment). "Where the pleadings fail to state a cause of action under the law or fail to state facts entitling the party to relief, the trial court may dismiss the lawsuit." *Id.* Thus, where a statute of limitations is asserted as a defense, the suit may only be dismissed by a motion to dismiss where the petition establishes on its face that the action is time-barred. *K.G. v. R.T.R.,* 918 S.W.2d 795, 797 (Mo. banc 1996). In reviewing the dismissal, this court must give the petition its broadest intendment, and allegations therein must be construed favorably to the plaintiff. *Heintz v. Swimmer,* 922 S.W.2d 772, 775–76 (Mo.App. E.D.1996).

## Discussion

■ The dispositive issue presented by this appeal is whether the statute of limitations bars DAN's suit. DAN claims that the right it asserts is grounded in Missouri's adoption of Article 9 of the Uniform Commercial Code ("UCC"), which governs secured transactions and security interests. *See* Missouri Revised Statutes, sections 400.9–101 *et seq.* As adopted, Article 9 allows for a secured party to repossess and sell collateral upon the default of a debtor. Assuming this repossession and disposition of the collateral complies with the requirements of the Code, the secured party shall then, "account to and pay a debtor for any surplus, and the obligor is liable for any deficiency." Section 400.9–608(a)(4).

Under DAN's theory of the present case, this right to a deficiency derives from its security interest in the car that was repossessed from Clark and, therefore, should be governed by the statutory framework of Article 9. Since Missouri's adoption of that Article contains no specific statute of limitations applicable to an action for deficiency, DAN suggests that the general statute of limitations governing actions for the payment of money grounded upon a writing should apply to the instant case. That statute, Section 516.110(1), imposes a ten-year period of limitation.

Contrary to this position, Clark asserts that DAN's right to collect in the present case arises from the contract executed at the sale of the car. Because cars are "goods," Clark asserts that Article 2 of the UCC, governing contracts for the sale of goods, is applicable to the present suit. *See Herbert v. Harl,* 757 S.W.2d 585, 588 (Mo. banc 1988). Unlike Article 9, Article 2 does contain a specific statute of limitations, requiring that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Section 400.2–725(1).

No reported Missouri case has yet applied either of the statutes of limitations urged upon this court to a deficiency action following the default and repossession of a car purchased under a retail installment contract. This question has been addressed repeatedly in other jurisdictions. *See* David J. Marchitelli, Annotation, *Causes of action governed by limitations period in UCC Section 2–725,* 49 A.L.R.5th 1, 144–50 (1997) (collecting cases). The overwhelming majority of jurisdictions to consider the question have found that such actions are governed by the four-year limitation period contained in Article 2. *See DaimlerChrysler Servs. N. Am. L.L.C. v. Ouimette,* 175 Vt. 316, 830 A.2d 38, 42 (2003) (collecting cases).

A retail installment contract like the one signed by Clark creates two different relationships: the relationship of a buyer to a seller and the relationship of an obligor to a secured party. *See First Nat'l Bank in Albuquerque v. Chase,* 118 N.M. 783, 887 P.2d 1250, 1252 (N.M.1994). Thus, when the contract was executed, DAN's predecessor held two rights, associated with these two relationships: a contractual right to payment and a security interest in the car being sold.

Which statute of limitations applies to the case at bar depends upon which of these rights DAN is currently asserting. This, in turn, requires an understanding of the nature of a deficiency suit. As the New Jersey Supreme Court has explained in similar circumstances:

> Such a suit is nothing but a simple *In personam* action for that part of the sales price which remains unpaid after the seller has exhausted his rights under Article 9 by selling the collateral; it is an action to enforce the obligation of the buyer to pay the full sale price to the seller, an obligation which is an essential element of all sales and which exists whether or not the sale is accompanied by a security arrangement.

*Assocs. Disc. Corp. v. Palmer,* 47 N.J. 183, 219 A.2d 858, 861 (1966).

■ Like the New Jersey court, this court finds that a deficiency action is an attempt to enforce an obligation arising out of the sales contract component of a retail installment contract after the remedies created by the security agreement component of that contract have been exhausted. As such, that action is properly governed by the four-year period of limitation set out in section 400.2–275.

That DAN's rights in this case arise from a contract for the sale of goods is further demonstrated by the temporal relationship of the parties involved and the sequence of events that led to the present suit. DAN's only relationship to Clark arises from its position as the assignee of the retail installment contract. Unlike a lender who supplies funds for the purchase of an automobile, neither DAN nor its predecessors had any relationship with Clark before she purchased the car.

Further, by the time that DAN acquired the retail installment contract at issue, the security interest had already been extinguished by repossession and sale. Those actions—undertaken by one of DAN's predecessors to this contract—exhausted the remedies available under the security agreement component of the contract.

In support of the proposition that the four-year limitation period contained in Article 2 should not apply to the present case, DAN points to language establishing that although Article 2 "applies to transactions in goods[,] it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction." Section 400.2–102. DAN claims the present case falls outside the purview of Article 2 by characterizing the transaction at issue as one intended to operate as a security transaction. This characterization ignores the word "only" in the above-quoted language and misconstrues the purpose of section 400.2–102.

■ The quoted language from section 400.2–102 is intended to address the situation in which a creditor attempts to avoid the requirements of Article 9 by cloaking a secured transaction in the language of a contract for sale.[2] The facts of the present

2. This situation would occur if DAN were to agree to lend Clark money on condition that

she make out a bill of sale for her car, to be returned upon repayment of the loan. This

case do not suggest that the retail installment contract at issue was intended to operate *only* as a security transaction; rather, that instrument created both a security interest and a contract for the sale of goods. In this regard, the official comment accompanying section 400.2–102 is instructive. That comment states that the purpose of the section is to "make clear [that Article 2] leaves substantially unaffected the law relating to purchase money security such as conditional sale or chattel mortgage *though it regulates the general sales aspects of such transactions.*" Section 400.2–102 cmt. (emphasis supplied). Clark's obligation to pay the purchase price established in the retail installment contract falls within the "general sales aspects" of the transaction at issue and is, therefore, governed by Missouri's adoption of Article 2 of the UCC. Because the present deficiency action is a mechanism by which DAN seeks to enforce that obligation, it is governed by the four-year limitation period contained in 400.2–275.

### Conclusion

■ The original petition filed in this case does not explicitly state the exact date upon which Clark's default occurred and DAN's cause of action therefore accrued. Even construing the allegations contained in the petition favorably to DAN, *see Heintz,* 922 S.W.2d at 775–76, it can be ascertained that the actual default occurred no later than March 27, 1998, when the loan was first declared in default by the finance company that subsequently repossessed the car. DAN's petition initiating the instant case was filed in November of 2004, roughly six years and eight months after that accrual date. Thus, the trial court was correct in concluding that

transaction would be, on its face, a present sale of the car, but would, in reality, only serve the purpose of securing the loan, with the car acting as collateral. Since this "sale"

the petition established, on its face, that DAN's cause of action was time-barred by section 400.2–275. The judgment is affirmed.

JOSEPH M. ELLIS, Presiding Judge, and ROBERT G. ULRICH, Judge, concur.

would operate *only* as a security transaction, section 400.2–102 would exclude it from the coverage of Article 2.